CAROL A. MALLORY *v.* EUGENE W. MALLORY
(13184)

HEALEY, SHEA, CALLAHAN, GLASS and HULL, Js.

Argued February 9—decision released April 5, 1988

*Elissa T. Wright,* with whom, on the brief, was *Joseph E. Moukawsher,* for the appellant (defendant).

*Barbara J. Masters,* for the appellee (plaintiff).

SHEA, J. In this appeal from a judgment dissolving the marriage of the parties, the defendant husband, Eugene Mallory, claims that the trial court erred: (1) in restricting his visitation rights with his daughter based on its finding, by a preponderance of the evidence, that he had sexually abused her, when it should have required proof by clear and convincing evidence; (2) in concluding that there was sufficient evidence to prove that he had sexually abused his daughter even under the preponderance of the evidence standard; (3) in ordering him to pay attorney's fees to the plaintiff wife, Carol Mallory, for this appeal; (4) in ordering him to pay attorney's fees to the plaintiff in connection with a proceeding in which he was found in contempt for failure to pay child support as ordered;

and (5) in finding him in contempt of court for failure to pay child support, and in denying his motion for a stay of execution on the child support provision of the judgment during the pendency of the appeal. The defendant conceded at oral argument that this fifth claim was moot, and, therefore, we shall not review it. We find no error on the first, second and fourth claims, but error on the third. Accordingly, we remand the case to the trial court with direction to modify the order concerning the payment of the attorney's fees on appeal and to deny the plaintiff's request therefor.

The parties were married on February 24, 1979. During the marriage one daughter was born. The plaintiff commenced a dissolution action in which she sought custody of and support for her daughter. After a hearing on the custody and support issues, the trial court, *Conway, J.*, awarded the plaintiff temporary custody of her daughter and granted a right of reasonable visitation to the defendant, who saw his daughter every weekend at his sister's home, where he was living.

During Easter weekend, Friday, March 28, 1986, to Sunday, March 30, 1986, the daughter stayed with the defendant at his sister's home. The plaintiff later testified that on the following Monday she had found blood on her daughter's underwear, and cuts and lacerations on her daughter's vagina. She took her daughter that day to the emergency room at William Backus Hospital in Norwich. David Schoon, a pediatrician, examined the daughter. He noted in a report, later introduced into evidence, that there were fresh abrasions in her vagina, and fresh rashes in her rectum. His report raised the possibility of sexual abuse. Eight days later, Robert Meier, a psychologist, interviewed the daughter concerning the cause of her vaginal irritation. The daughter indicated that her father had caused the injuries to her vagina, although she later refused to tell state

police trooper Kathleen Ackerman how these injuries had taken place.

After a full hearing concerning the plaintiff's allegation that the defendant had sexually abused his daughter, the trial court, *Hon. Eli L. Cramer,* state trial referee, rendered final judgment on October 2, 1986, and dissolved the marriage of the parties. It awarded custody of the daughter to the plaintiff, and also ordered that the defendant have visitation with his daughter for one day a week for four hours under the supervision of the Family Relations Division of the Superior Court. The court later ordered the defendant to pay the plaintiff $500 as an allowance for her attorney's fees for this appeal. On February 17, 1987, the trial court, *R. O'Connell, J.,* found the defendant in contempt because he had failed to meet his child support obligations, and on March 2, 1987, ordered him to pay the plaintiff $300 for the attorney's fees she incurred as a result of the contempt proceeding.

I

The defendant claims that the court erred in restricting his visitation rights with his daughter without making a specific finding that there was clear and convincing evidence that he had sexually abused her. He contends that a finding of parental sexual abuse in child custody actions requires a standard of proof higher than the preponderance of the evidence test ordinarily applicable in civil actions. We note initially that the trial court indicated that it had not applied the standard of proof that would be required in a criminal trial, proof beyond a reasonable doubt, but did not further specify what standard of proof it had applied.

In *Cookson* v. *Cookson,* 201 Conn. 229, 233–41, 514 A.2d 323 (1986), we rejected the claim that a clear and convincing standard of proof should be required in proceedings involving the modification of custody orders,

and held that the ordinary preponderance of the evidence standard should apply. The defendant contends that a higher standard of proof should apply in custody cases in which there are allegations of sexual abuse because a parent so accused must bear a substantial social stigma when a court in a custody case concludes that he has sexually abused his child. He conceded at oral argument, however, that no jurisdiction has thus far required clear and convincing evidence in custody cases in which there are allegations of sexual abuse.

In custody cases we are concerned with "the best interests of the child"; General Statutes § 46b-56 (b);[1] rather than with the social standing of the parents in the community. We believe that a preponderance of the evidence standard adequately protects a parent from false accusations of sexual abuse, and that the ordinary civil standard of proof better serves the strong societal interest in protecting children from abusive parents. See *Cookson* v. *Cookson,* supra.

In *Santosky* v. *Kramer,* 455 U.S. 745, 769–70, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982), the United States Supreme Court held that in proceedings in which a permanent deprivation of parental rights may result, such as a termination of parental rights hearing, due process requires that a state prove statutory termination criteria by "clear and convincing evidence" rather than by a "fair preponderance of the evidence." The defend-

---

[1] "[General Statutes] Sec. 46b-56. (Formerly Sec. 46-42). SUPERIOR COURT ORDERS RE CUSTODY AND CARE OF MINOR CHILDREN IN ACTIONS FOR DISSOLUTION OF MARRIAGE, LEGAL SEPARATION AND ANNULMENT. ACCESS TO RECORDS OF MINOR CHILDREN BY NONCUSTODIAL PARENT. . . .

"(b) In making or modifying any order with respect to custody or visitation, the court shall be guided by the best interests of the child, giving consideration to the wishes of the child if he is of sufficient age and capable of forming an intelligent preference, provided in making the initial order the court may take into consideration the causes for dissolution of the marriage or legal separation if such causes are relevant in a determination of the best interests of the child."

ant argues that when a court in a custody hearing determines that a parent has sexually abused his child it attaches a permanent stigma to that parent's reputation. He contends that such a stigma is similar to a permanent deprivation of parental rights.

The trial court's judgment, however, provides that at the end of a one year period, during which the defendant is required to attend counseling sessions, "the Family Relations Department, in a mediation session, if the office feels it appropriate, shall arrange an appropriate visitation schedule. If the Family Relations Department desires, or the parties cannot agree, the matter is to be returned to this court which retains jurisdiction." The present restrictions on the defendant's visitation rights are temporary, not permanent. Moreover, the defendant still has the opportunity to visit his daughter four hours a week, and, thus, it cannot be said that the trial court has completely severed the relationship between him and his child, as was the case in *Santosky* v. *Kramer, supra.* We have held that proof by a preponderance of the evidence rather than by clear and convincing evidence applies in temporary custody hearings; *In re Juvenile Appeal (83–CD),* 189 Conn. 276, 299–300, 455 A.2d 1313 (1983); and in neglect proceedings; *In re Juvenile Appeal (84–AB),* 192 Conn. 254, 262–65, 471 A.2d 1380 (1984); because they do not involve a permanent termination of parental rights.

We conclude that the trial court was not required to apply a clear and convincing evidence standard of proof in this case. We hold that the normal civil standard of proof, which is a fair preponderance of the evidence, is applicable in child custody hearings in which there are allegations that a parent has sexually abused his child, at least where that parent retains some visitation rights, which may be reasonably restricted to pro-

tect "the best interests of the child." General Statutes § 46b-56 (b).

## II

The defendant also claims that, even if a preponderance of the evidence standard of proof was appropriate, the evidence was insufficient to support the conclusion of the trial court that the defendant "father ha[d] acted in a sexually inappropriate manner towards the child."

During his interview, the court appointed psychologist, Meier, asked the daughter what had caused her vaginal injuries. She replied, "It was daddy." Meier then asked her if her statement was the truth, and she said, "Yes." Meier later testified that, after she had made this statement, "[t]he child was visibly shaken and scared." The defendant argues that the statement of the child was unreliable. About one week after her interview with Meier, the child refused to tell state police trooper Ackerman who had injured her vagina, although during that same day she had said to Meier, "It was me and daddy." The defendant contends that Meier coerced his daughter into making statements implicating him in sexual abuse.

There was substantial circumstantial evidence, however, to corroborate the daughter's statements. The pediatrician, Schoon, testified, as an expert witness, that the daughter's vaginal injuries were "most likely" the result of sexual abuse. The defendant argues that this testimony related only to a possibility and, therefore, was legally insufficient to establish that the child had been sexually abused. We conclude, however, that Schoon's testimony was expressed in terms of reasonable medical probabilities, and, therefore, was sufficient to establish causation. *Struckman* v. *Burns,* 205 Conn. 542, 553–55, 534 A.2d 888 (1987). The defendant called Robert Crootof, a gynecologist, as a witness. Crootof had examined the child when she was admitted into the

emergency room at William Backus Hospital in Norwich on March 31, 1986. Crootof testified that there were "possible" explanations for her vaginal injuries other than sexual abuse, such as scratching or a bacterial infection. On direct examination by the defendant, Crootof conceded that he could not establish with reasonable medical probability that any of these sources had caused her injuries, and "disclaim[ed] any great experience in pediatric gynecology." On the other hand, Schoon testified that he had extensive experience concerning child sexual abuse. We conclude that there was sufficient evidence for the trial court to determine that the child had been sexually abused.

The defendant contends that, even if there was sufficient evidence to establish that *someone* had sexually abused his daughter, there was not sufficient evidence for the trial court to conclude that *he* had abused her. He points out that the plaintiff admitted that she did not discover blood on her daughter's underwear until about twenty-seven hours after he had returned his daughter to the plaintiff's home. The plaintiff testified, however, that she had not unpacked the clothes worn by her daughter while she visited her father until that time. The defendant conceded that he was the only person alone with his daughter that weekend, and that the two had shared the same bed. "We will not reverse the decision of the trial court unless it is clearly erroneous in light of the evidence and the pleadings in the record as a whole." *Damora* v. *Christ-Janer,* 184 Conn. 109, 113, 441 A.2d 61 (1981). We conclude that the trial court's determination that the defendant had sexually abused his daughter was not clearly erroneous in view of the evidence.

## III

The defendant claims that the trial court erred in ordering him to pay the plaintiff $500 toward her attor-

ney's fees for this appeal. The defendant presented undisputed evidence that he had no liquid assets, and that he had limited income. The trial court determined that, because the defendant was able to borrow money from his family to enable him to appeal, it had the authority under General Statutes § 46b-62[2] to order him to pay part of the plaintiff's attorney's fees for this appeal. The plaintiff contends that this order was not an abuse of discretion because the award was only a modest amount of money. We conclude that the trial court abused its discretion in awarding these attorney's fees because the fact that the defendant's family was assisting him to pay his attorney's fees on appeal did not reasonably support a conclusion that they would help him pay the plaintiff's attorney's fees. See *Mays* v. *Mays,* 193 Conn. 261, 270, 476 A.2d 1562 (1984). "There is nothing in the record to indicate that he had any resources which could be applied to the payment of her expenses in defending the appeal. Under these circumstances it was an abuse of discretion for the court to order that the defendant pay . . . towards the plaintiff's counsel fees." Id.; see also *Turgeon* v. *Turgeon,* 190 Conn. 269, 280, 460 A.2d 1260 (1983); *Koizim* v. *Koizim,* 181 Conn. 492, 500–501, 435 A.2d 1030 (1980).

---

[2] "[General Statutes] Sec. 46b-62. (Formerly Sec. 46-59). ORDERS FOR PAYMENT OF ATTORNEY'S FEES IN CERTAIN ACTIONS. In any proceeding seeking relief under the provisions of this chapter and sections 17-323a, 17-323b, 45-162, 46b-1, 46b-6, 46b-204, 47-14g, 51-348a and 52-362, the court may order either spouse to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. If, in any proceeding under this chapter and said sections, the court appoints an attorney for a minor child, the court may order the father or mother, or both, to pay the reasonable fees of the attorney or may order the payment of the attorney's fees in whole or in part from the estate of the child. If the child is receiving or has received state aid or care, the reasonable compensation of the attorney shall be established by, and paid from funds appropriated to, the judicial department."

## IV

The final claim of the defendant is that the trial court, *R. O'Connell, J.,* erred in ordering him to pay the plaintiff $300 for attorney's fees incurred by her during a contempt hearing brought against him. After final judgment had been rendered dissolving the marriage, the plaintiff brought contempt proceedings against the defendant for failure to pay child support as ordered by the judgment. The court found the defendant in contempt. The defendant has abandoned his claim that the court erred in finding him in contempt, because the issue is now moot.

This court must, nevertheless, briefly examine whether the trial court erred in finding the defendant in contempt before we can determine whether it abused its discretion in ordering him to pay the attorney's fees incurred by the plaintiff during the contempt proceedings. The defendant argued, before abandoning this claim, that the trial court had erred in finding him in contempt for failing to comply with the child support provisions of the final judgment because he was too poor to meet those obligations. The inability of a party to obey an order of the court, without fault on his part, is a good defense to the charge of contempt. *Mays* v. *Mays,* supra, 264; *Tobey* v. *Tobey,* 165 Conn. 742, 746, 345 A.2d 21 (1974). The defendant in the case at bar, however, failed to seek a modification of his child support obligations until after the plaintiff had instituted contempt proceedings against him. In these circumstances, the trial court did not err in finding the defendant in contempt, at least in regard to the child support arrearage accumulated before he sought a modification of the child support orders. Moreover, there was evidence that the defendant had not acted in good faith in fulfilling his child support obligations in light of the fact that he had paid only sixty dollars in child support

over a five month period while during that time he had paid $1200 to his attorney. If this claim were before us, we would conclude that the court did not err in finding the defendant in contempt for failure to comply with the child support orders in the final judgment.

The defendant contends that the award of attorney's fees to the plaintiff for the costs incurred by her during the contempt proceedings was an abuse of discretion in light of his limited economic circumstances, which are discussed in part III of this opinion. Even if the defendant was financially unable at that time to comply with his child support obligations, his failure to seek modification of the child support orders made it necessary for the plaintiff to institute contempt proceedings against him. As we have discussed in the preceding paragraph, the trial court was justified under these circumstances in finding him in contempt.

"When any person is found in contempt of an order of the superior court entered under section 46b-60 to 46b-62, [which include child support orders] . . . the court may award to the petitioner the fees of the officer serving the contempt citation, to be paid by the person found in contempt." General Statutes § 46b-87. Under § 46b-62,[3] a court may award reasonable attorney's fees to a person who brings "any prosecution for nonsupport of a minor child or children" under General Statutes § 51-348a. We hold by analogy to these statutory provisions that when a person is properly found in contempt for failure to comply with child support orders, a court may award the petitioner reasonable compensation for attorney's fees incurred during that contempt proceeding. The trial court in the case at bar ordered a reasonable payment schedule of ten dollars a week to pay off the $300 of attorney's fees. We conclude that the trial court did not abuse its discretion in this regard.

[3] See footnote 2, supra.

There is error in part and the case is remanded to the trial court to modify its order concerning the payment of the plaintiff's attorney's fees on appeal.

In this opinion the other justices concurred.