[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On July 16, 1999, the court (Solomon, J.) rendered judgment dissolving the marriage of the parties.[1] The court ordered the defendant to pay child support in the amount of $90 per week. The court also ordered the defendant to pay certain outstanding debts, and one half of the minor child's unreimbursed medical expenses.
The plaintiff filed a motion for contempt in which she alleges that the defendant has failed to pay the Baxter Credit Union Visa bill and the American Express account bill, in willful defiance of the court's order. The defendant filed a motion to modify the judgment with respect to support, claiming that he has been unable to earn the level of income imputed to him by the dissolution court. He contends that this fact constitutes a material and substantial change in his circumstances.
Pursuant to C.G.S. Section 46b-8, this court heard both motions concurrently at a contested evidentiary hearing. Both parties attended the hearing and were represented by counsel. Both attorneys submitted post-hearing memoranda of fact and law on July 31, 2000.
The court has carefully considered all of the evidence and testimony introduced at hearing, and has also read and considered the written submissions by counsel.
 FACTUAL FINDINGS
At the time of dissolution, Judge Solomon ordered the defendant to pay child support payments of $90 per week, and found that support amount to be in compliance with statutory guidelines. (Transcript, p. 31). The court noted that its order was ". . . based upon an estimated earning capacity for Mr. Cottrell of $30,000 per year, and based upon an [earning capacity] of 110 to 120,000 by Mrs. Cottrell." (Transcript, p. 31).
Mr. Cottrell was unemployed at the time Judge Solomon heard the contested dissolution trial. Nonetheless, the judge found that the defendant was capable of earning annual income of $30,000. Judge Solomon noted: CT Page 10945
 "Although the black and white of a transcript would not reveal this, Mr. Cottrell makes an excellent appearance. He is extremely articulate and very bright. In fact, as I recall, he had the capacity to even invent something. I believe it was an underwater — Underwater camera housing.
 Regrettably, with all the talent that Mr. Cottrell has that has not translated itself into economic success. The most that Mr. Cottrell has earned, as I recall given the testimony this case, is $30,000 in one year. And therefore I find — and again noting that he is only 44 years of age and capable of much [more] in the future than in the past, he has been an underachiever. He could have done more, and should have done more." (Transcript, p. 15).
When he determined the defendant's earning capacity in July 1999, Judge Solomon found that the defendant was a high school graduate who had served four years in the U.S. Navy. (Transcript, p. 14). The judge also found that Mr. Cottrell's prior history included employment with the New Mexico health department, construction work, and jobs as a bouncer, boat deckhand, and private investigator. (Transcript, p. 14-15).
Judge Solomon further determined that the defendant's family ". . . has provided financial assistance on a fairly regular basis to him when he's been in need of such contributions." (Transcript, p. 15). The judge noted: "It appears that such assistance will continue in the future as well." (Transcript, p. 16)
Judge Solomon ordered the defendant to pay a Baxter Credit Union Visa debt in the amount of $22,000 and an American Express account debt of $3,800. (Transcript, p. 35). The court articulated several specific reasons why it was assigning the two debts to the defendant (Transcript, p. 35). It also found that". . . Mr. Cottrell, based upon past history, has access to funds with which to satisfy these obligations." (Transcript, p. 36).
The evidence in the contempt/modification hearing established that the defendant secured financial assistance from his father and paid a lump sum payment in excess of $6,000 towards the Baxter Credit Union Visa debt in September 1999. Mr. Cottrell has not made any other payments toward the American Express and Baxter accounts since then. A balance of $4784 is currently owed to American Express and $15,755 is due on the Baxter Credit Union Visa bill.[2] Collection litigation against the plaintiff CT Page 10946 by both creditors is imminent.
In challenging the claim that he willfully failed to pay these debts, and in asserting his contention that the current support obligation should be modified, the defendant maintains that he is unable to earn personal income of $30,000 annually, and that he can no longer rely on assistance from his parents to pay the credit card bills.
The defendant offered evidence about his work history and salary since the date of the dissolution decree, and about his efforts during the past year to obtain more substantial employment. Since September 1999, Mr. Cottrell worked for a temporary employment agency at assignments earning approximately $ 7 per hour, at a discount furniture store where he received approximately $8.50 an hour, and at an electrical supply company where he is paid $8.50 an hour.
The defendant has been at the electrical supply company since April 5, 2000. His gross weekly salary there has ranged in the area of $250-$300 per week, although he did earn gross wages of $440 one week when he worked ten hours of overtime.
Mr. Cottrell testified that he has applied for 30 positions since the date of judgment, and submitted a journal containing the names of concerns to which he unsuccessfully submitted resumes or applications during the past year. (Defendant's Exhibit 1). The defendant testified that he works occasionally as a bartender, and still retains his private investigator's license. He claimed that he is having difficulty obtaining jobs as a private investigator because he had to sell much of his equipment, and because a prior restraining order in his domestic relations case[3] has interfered with prospective employment opportunities.
The defendant also testified that although his father gave him money last September to make a payment towards the Baxter Credit Union Visa bill, his father is now ill, and his parents will no longer assist him with these financial obligations.
Mr. Cottrell claimed that he contacted both creditors. He alleges that Baxter rebuffed his offer to pay $125 a month. The defendant claims that Baxter is requiring a payment of $382 per month to keep the account current, and that American Express is seeking a monthly payment of $106. The defendant did not produce any correspondence related to his negotiations with either creditor, and he was unable to recite the name of the Baxter representative with whom he spoke. As noted above, the defendant has not made any payment on either debt since September 1999, and he has not set any money aside for that purpose since then. CT Page 10947
The court has carefully considered all of the evidence and testimony offered by the defendant, but finds it to be unpersuasive.
With respect to the motion to modify support, the court finds that the defendant failed to prove by a preponderance of the evidence that he cannot earn $30,000 per year, or that there has been a material and substantial change in his financial circumstances since the date of the decree.
The court finds that although the defendant has worked during the past year at entry level jobs which have paid between $7-$8.50 per hour, his background and prior employment history indicate that he has the capacity to earn $30,000 per year. Mr. Cottrell is in his mid forties, and does not suffer from any physical or mental infirmities. He holds a high school degree and served in the U.S. Navy. This court agrees with Judge Solomon's earlier finding that Mr. Cotrell makes an excellent appearance, and is articulate and bright. The defendant holds a private investigator's license, which could be a meaningful source of income for him. He also possesses other significant employment skills and experiences. This court believes that the defendant could earn considerably more than he is making at present, if he chose to do so.
The court does not accept the validity of Mr. Cottrell's excuses about why he is not utilizing his investigator's license. The court also finds that the defendant's other work history and job skills, in such diverse areas as bartending, construction, and the health field, support Judge Solomon's conclusion about Mr. Cottrell's present earning capacity.
This court also does not agree with the defendant's argument that his efforts to gain employment prove that he does not have the earning potential ascribed to him by the dissolution court. Although the defendant applied for some jobs related to his prior investigative experience (e.g. undercover loss prevention operative, insurance investigations case manager and intelligence clerk with a gambling casino) his job search was hardly focused in that area. (See Defendant's Exhibits 1 and 3). Indeed, several of the positions for which the defendant applied (e.g. career resource specialist at a high school, dental assistant, administrative assistant at a church, and canine officer) appear to have little relationship to the defendant's prior employment or skills. (Defendant's Exhibits 1 and 3). The majority of the notations in Mr. Cottrell's job search journal were made during the fall of 1999 and the winter of 2000, and the last entry was made on March 15, 2000. Although the defendant's evidence establishes that he applied for a number of positions, it does not prove that he has made a consistent, dingent and meaningful effort to obtain more remunerative employment during the past year. The evidence CT Page 10948 fails to convince this court that the defendant's current earning capacity is less than $30,000 per year.
Although the legal obligation to pay the two debts rests solely with the defendant, the dissolution court found that Mr. Cottrell has historically relied upon his parents' financial contributions, and that the defendant was likely to enjoy such support after the dissolution.
The defendant alleges that after the September 1999 payment, his parents indicated that they will no longer assist him financially in meeting his court-ordered obligations. Here, too, the court is not convinced. The defendant resides with his mother. Although there was testimony that the defendant "shares expenses" with his mother, Mr. Cottrell' s July 10, 2000 financial affidavit reflects that he pays no rent or utilities, other than a phone bill of $30 per week. All of the defendant's other housing and utility expenses are assumed by his mother.
The defendant's affidavit also indicates that Mr. Cottrell pays the following weekly expenses: $50 for food, $5 for clothing, $30 for gas and oil, $11.50 for auto repairs, $6 for auto insurance, $90 for child support and $20 a week for support arrearage. The July 10th financial affidavit lists the defendant's total weekly income of $253.15 and total weekly expenses of $242.50. However, Mr. Cottrell also testified that he is not in arrears on his child support payments. Accordingly, the defendant's net week expenses are $20 per week lower (for a weekly total of $222.50). The court notes that Mr. Cottrell's financial affidavit does not list any debts for counsel fees in connection with this proceeding, which necessitated several court appearances by his counsel.
The court rejects the defendant's contention that he will not receive future financial assistance towards his court-ordered obligations from his family. The payment advanced by his father made last September, his longstanding reliance upon his family for financial aid and his current living situation all suggest otherwise. Accordingly, the court does not find that the parent's purported refusal to render further assistance with the credit card debts establishes a material and substantial change in circumstances.
For all of the forgoing reasons, the court finds that the defendant has not proven by a preponderance of the evidence that a material and substantial change in his financial circumstances has occurred since the date of the dissolution decree. Accordingly, his motion to modify support is hereby DENIED.
The court is mindful that "[t]he inability of a party to obey an order CT Page 10949 of the court, without fault on his part, is a good defense to the charge of contempt." Mallory v. Mallory, 207 Conn. 48, 57, 539 A.2d 995, (1988). In this case, the court must determine whether the defendant's failure to pay the credit card debts resulted from willful defiance of the court's order, or from his financial inability to meet those obligations.
As noted above, this court finds that the defendant still has the capacity to earn $30,000 per year. His failure to do so during the past year did not result from mental or physical disability, or a lack of marketable employment skills. Rather, the court finds that the defendant's financial situation is attributable to his choice of jobs which offer wages considerably below the income level he is capable of achieving. The defendant's failure to earn income in accordance with his capacity has significantly impeded his ability to meet his court-ordered obligations.
Given the fact that the defendant's housing expenses, and the majority of his utility bills, are paid by his mother, Mr. Cottrell could have substantially reduced the Baxter and American Express debts during the past year if he had secured a job which paid gross wages of $30,000 per year.
Furthermore, and perhaps most significantly, the court finds that since the September 1999 payment, the defendant has failed to make any payments whatsoever on either credit card bill, and he has not set aside any money for that purpose. Mr. Cottrell testified that he offered to pay Baxter $125 per month. The defendant's purported offer to do so indicates his belief that he had the capacity-either on his own or with assistance — to make regular periodic payments towards the court-ordered obligations.
Despite that, the defendant has not made a single payment on either of the two accounts since September 1999. The court finds by a preponderance of the evidence that the defendant had the capacity during the past 11 months to make some payments toward the Baxter and American Express card debts, or to escrow money for that purpose. The court finds that the defendant's failure since last September to make even minimal efforts at repayment constitutes willful disobedience of the court's orders.
Finally, the court finds that the defendant's testimony concerning his purported contacts with the creditors was also unpersuasive. Since it was the defendant's obligation to pay the two bills, it was also his responsibility to enter into concerted and meaningful negotiations with the two creditors in an attempt to make payment arrangements and obviate possible legal problems for the plaintiff. The court finds, based upon a CT Page 10950 preponderance of the evidence, that the defendant failed to take such steps.
Based on all of the forgoing, the court finds by a preponderance of the evidence that the defendant is in CONTEMPT of the court's order that he pay the Baxter Credit Union Visa card debt and the American Express card debt, which presently total $20,559, subject to adjustment for recent interest charges.
The court defers its ruling concerning the punishment which may be imposed as a result of this contempt finding. The court will conduct further hearing on this matter at 9:30 am. on Monday, October 23, 2000 at the Superior Court in Norwich. The court will decide the issue of punishment at that hearing. If the full amount of the Baxter and American Express debts has not been paid by said date, the defendant should be prepared to show at hearing the exact amount which he has paid on each account since the date of this ruling, what efforts he has made to enter into payment arrangements with each creditor, and a comprehensive plan detailing how both court-ordered obligations will be satisfied in the future.
There was evidence at hearing that the defendant failed to pay one half of four medical bills for the minor child. The court finds that the defendant owes the plaintiff the additional sum of $1,656.70, which is one half of the total amount owed for those medical expenses. Although the court finds that the defendant is in arrears on the payment of these bills, it does not find that the defendant's failure to pay constituted contempt. The court is not convinced by a preponderance of the evidence that the defendant was aware of the existence of these debts. The court orders that in addition to his current weekly child support payment of $90, the defendant pay the additional sum of $20 per week to the plaintiff until the amount of $1,656.70 is paid in full.
SO ORDERED:
 BY THE COURT: Dyer, J.