[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Jerry Herring, brings this action in three counts against the defendant, Yvonne L. Daniels in a lengthy and detailed second amended complaint.
The plaintiff, in his first count, maintains that he and defendant are co-owners of a piece of real estate located in Hartford, Connecticut, and known as 81 Canterbury Street as to which defendant has legal title. He claims that he is the owner of an equitable interest in said property by virtue of having resided continuously in the property from 1987 to July 1998 where they lived together as though they were husband and wife and treated said property as a commonly owned family residence. He also maintains that he resided with the defendant as a co-owner under a verbal, express, and implied understanding that they would live together in said property as though they were husband and wife and share the ownership, upkeep, maintenance and expense of said property.
In support of this claim he states that he paid the monthly mortgage payments on a first mortgage with Northeast Savings; where defendant was the borrower and mortgagor; that he obtained a second mortgage with the Hartford Firefighters Federal Credit Union (HFFCU) in the principal amount of $60,000 where he was the borrower and the defendant was the co-maker and the mortgagor which mortgage was later paid off with the CT Page 12910 proceeds of a first mortgage refinance loan with the HFFCU in the principal amount of $100,000 where he was the borrower and the defendant was the co-maker of said loan and the mortgagor. He further alleges that he paid off with his own funds the defendant co-owner's unsecured loan to Conn Conn in the amount of $11,610.73 thereby keeping said real property free and clear of an encumbrance by said creditor. He further claims to have paid off with his own funds in 1987 an attachment and lien on said property arising from a debt of the defendant/co-owner to the State of Connecticut in the amount of $2,353.59. Plaintiff also claims that he paid the monthly mortgage payments on the first mortgage refinance loan of 1993 with HFFCU as well as by payment of the monthly mortgage payments on the second mortgage with HFFCU from February 1987 to May 17, 1993, when said mortgage was paid off in full. In support of his claim he alleges that he did the general maintenance and repairs on said property from 1987 to August of 1998, and he paid off a loan on May 17, 1993 with his share of joint funds of the parties in the amount of $2,388.02. Plaintiff further claims that up until August 1998 he and the defendant verbally agreed on numerous occasions expressly to share forever the expenses of and benefits of said real property as if they both owned it equally and to share in the earnings and property accumulated by them during their relationship. He further states that up until August 1998 the parties agreed implicitly by their conduct and/or words to share forever the expenses and benefits of said property as if they both owned it equally and to share in the earnings and property accumulated by them during their relationship.
In a separate paragraph of the complaint the plaintiff alleges that since January 1999 there were additional reasons why the plaintiff is the owner of an equitable interest in said property; namely, that commencing in January 1999 he and the defendant agreed that he could again reside in said property and that he continues to reside therein and in January 1999 or several months thereafter they agreed that they would get married and go to marriage counseling and that they agreed that the defendant would pay all the mortgage loan payments until they were married and while the plaintiff resided there; that the plaintiff would pay one-half of the mortgage loan payments after they were married and, further, that the plaintiff would receive a certain sum of money from their planned second mortgage loan proceeds, $1,000, which sum was paid and although in January 1999 the defendant agreed to pay the plaintiff $3,000 immediately and another $4,000 before January 2000, neither payment was made; that in April 1999 after some planning, the plaintiff assisted the defendant in raising cash to help the defendant's son by releasing his Lis Pendens and thus help the defendant obtain a second mortgage on her property and again in August 1999 he assisted the defendant in raising cash to help her son by releasing his Lis Pendens and that the defendant also agreed that the plaintiff would receive a certain sum of money from said CT Page 12911 mortgage loan, namely $1,500, which sum was paid to him.
In the seventh paragraph of his complaint he states that Household Finance has a first mortgage on the Canterbury real property in the original amount of $90,000 dated August 1999 and that Atlantic Mortgage has a second mortgage in the original amount of $15,000 dated August 1999.
In the eighth paragraph the plaintiff claims that payments made towards the maintenance, upkeep and mortgages on said real property made after July 1, 1998 until such time as he resumed residing in said premises in January 1999 were made with the intention that the same would be for his sole benefit in a future accounting or contribution.
In paragraph nine he claims that payments by him toward maintenance, upkeep and mortgages on said real property made during the time the plaintiff resided in said premises up through September 1998 were made with the verbal, express and implied agreement to share forever the expenses of and benefits of said real property as if they both owned it equally and to share in the earnings and property accumulated by them during their relationship.
In the tenth paragraph of the first count the plaintiff claims that payments made toward mortgages on said real property subsequent to January of 1999 and in particular in June of 1999 where made with a verbal, express, and implied agreement to share forever the expenses of, and benefits of, said real property as if they both owned it equally and to share in the earnings and property accumulated by them during their relationship.
In paragraph eleven the plaintiff claims that despite demand made to the defendant she has not continued to share with the plaintiff her interest in said real property and has breached said agreements to share in the property and to marry the plaintiff all to the plaintiff's damage.
In the second count the plaintiff alleges a contractual right to share accumulated assets. He repeats paragraph one through ten of this first count and claims in addition, that the payments made by the plaintiff as aforementioned were made by the plaintiff for the benefit of the defendant co-owner with the intention of the plaintiff and the understanding between himself and the defendant that said payments would be applied to the interest of the plaintiff in said property or paid back to the plaintiff within a reasonable time and that despite demand made the defendant has not continued to share with the plaintiff her interest in said property nor has she paid said amounts to the plaintiff and she CT Page 12912 has breached said agreements to share her interest in said property and to marry the plaintiff, all to his damage.
In a third count the plaintiff claims restitution based on quantum meruit. Again, he repeats paragraphs 1 through 10 of the first count and in paragraph 11 he states that the plaintiff's payments as aforementioned were a great benefit to the defendant and unless the plaintiff is compensated by receiving a share in said real property or payment of said amounts paid by him the defendant will be unjustly enriched all to his damage and that despite demand the defendant has not continued to share with the plaintiff her interest in said real property nor has she paid said amounts to the plaintiff, nor has she followed through on her promises to marry the plaintiff, all to the plaintiff's damage. Plaintiff claims a partition of the real estate according to the respective rights of the co-owners, an allocation to the plaintiff of the proceeds from the sale according to his interest, an accounting, a judgment against the defendant co-owner's share on the sale of the real property, a right to restitution based on quantum meruit, an equitable interest in said property, money damages and other relief and if a sale would better promote the interests of the co-owners than (sic) a sale of the premises and a division of the proceeds, after payment of the expenses of the sale, between the parties according to their respective rights in the real estate.
In her answer to the second amended complaint the defendant denies all of the allegations indicating ownership or a promise of ownership or any promise, express or implied, of co-ownership to the plaintiff although she admits that she resided together with the plaintiff in the property at 81 Canterbury Street. She denies, however, that she did so continuously from 1987 to July 1998 and denies that they lived as husband and wife and treated said property as a commonly owned family residence and that they ever entered into any verbal, express, or implied understanding. She also denies that the plaintiff shared the ownership, upkeep, maintenance and expenses of said property and she further denies that the plaintiff used his own funds to pay the defendant's unsecured loan to Conn Conn and that he used his own funds in 1987 to pay an attachment and lien placed on the property. Defendant further denies that the plaintiff paid for all general maintenance and repairs of said property from 1987 to 1998 and that she ever maintained any joint funds with the plaintiff.
Defendant admits that she refinanced her property on May 17, 1993, that she did so at the plaintiff's urging and for the sole benefit of the plaintiff who agreed to make the monthly payments on the loan and who received the balance of said refinanced loan after the first mortgage was paid off.
CT Page 12913 She also admits that she obtained a second mortgage on her property on January 15, 1987 with the HFFCU; that she did so at the plaintiff's urging and for the sole benefit of the plaintiff who agreed to make the monthly payments on the loan and who received the proceeds from the loan.
Defendant admits that in January 1999 the defendant resumed a girlfriend/boyfriend relationship with the plaintiff and eventually allowed him to move back into her home where he was living at the time the answer was filed. She admits that on January 27, 1999 she agreed to marry the plaintiff in one year but denies that under this agreement she agreed to go to a marriage counselor. She admits that on January 30, 1999 by written agreement the defendant and the plaintiff agreed that 1) the defendant owner would continue to pay the full monthly loan payments on her property, 2) that the plaintiff would continue to have no ownership in said property, and 3) that defendant has full ownership of the property located in Canterbury Street and admits that the parties agreed to marry within one year. She further admits that on January 27, 1999 by written agreement the plaintiff agreed to pay one-half of the remaining monthly loan payments after he and the defendant owner married. She admits that in January 1999 she agreed to give the plaintiff a certain sum of money and did in fact give him the agreed upon sums but denies that it was $1,000. She admits that on January 27, 1999 she agreed to pay the plaintiff $3,000 "before the agreement was signed" and another $4,000 before January 2000 as consideration for the plaintiff withdrawing this partition action against her on or before January 28, 1999. She denies, however, that she never made either payment. She denies that the plaintiff helped her to raise cash as alleged in Paragraph G but admits that the plaintiff released a Lis Pendens which enabled her to obtain a second mortgage. She admits that the plaintiff released his Lis Pendens again in August 1999 and that said release enabled her to refinance her loan, but denies that she agreed that the plaintiff would receive a certain sum of money from the proceeds of the refinanced loan.
As to the second count the defendant denies that she ever shared with the plaintiff her interest in the real estate property. She denies, further, that she has not paid the agreed upon sums of money to the plaintiff and denies that she ever breached any agreement to share her interest in the real property with the plaintiff.
She denies the principal allegations of the third count.
The appropriate standard of proof in a partition action based on a theory of equitable ownership is a fair preponderance standard. Cook v.Allstate Insurance Company, Superior Court, judicial district of Tolland, Docket No. 52896 (Dec. 5, 1996; Rittenband, J.) Joint tenants CT Page 12914 and tenants in common have a statutory right to a partition action pursuant to Connecticut General Statutes Section 52-495. In order to partition real property, all one must do is prove that he or she has an ownership interest, Section 52-495 CGS, "When a civil statute is silent as to the applicable standard of proof, the preponderance of the evidence standard governs factual determination required by statute." State v.Davis, 229 Conn. 285, 296 (1994). "Normal civil standard of proof . . . is fair preponderance of the evidence." Mallory v. Mallory, 207 Conn. 48,53 (1988), Dunham v. Dunham, 204 Conn. 303, 322 (1987).
The same standard would, of course, apply to a contractual claim and quantum meruit.
In the opinion of the Court the following are the operative facts in this case: The defendant is the sole record owner of the property at 81 Canterbury Street, Hartford, Connecticut. She and her ex-husband purchased the property in May 1976. She acquired sole ownership of the property in May of 1981 when she gave her ex-husband a mortgage note for $11,000 and he gave her a Quit Claim deed. This mortgage was later assigned to Conn Conn.
The plaintiff and the defendant lived together as cohabiting, unmarried lovers from 1987 to July 1998 in the subject premises. When they first began to co-habit the plaintiff was still married to his former wife. During the period from 1987 to 1998 on more than one occasion he was forced to leave the premises at the request of the defendant. The plaintiff and the defendant were never legally married. When they began to co-habit the property was subject to a first mortgage with the Northeast Savings Bank as well as the mortgage to Conn Conn.
On January 15, 1987 the defendant co-signed for the plaintiff using her property as collateral a note to the HFFCU in the amount of $60,000 out of which the $13,964 in encumbrances on her property had to be paid. From the transaction the plaintiff realized $30,000 or the net proceeds.
Over the period from 1987 through 1993 when the loan was refinanced the plaintiff paid for the mortgage by agreement with the defendant but no attempt was ever made to transfer the half interest in the home to the plaintiff.
In 1993, again at the urging of the defendant, the parties refinance by obtaining a loan of $100,000, again signed by both, but for which the defendant's real estate was placed as collateral. From this the Northeast Savings Bank mortgage was paid off, $5,000 was kept by the defendant, and the balance went for the benefit of the plaintiff. He paid the monthly payments on this mortgage from 1993 to 1998, but again no attempt was ever CT Page 12915 made to transfer title in the real to him. The monthly payments were in consideration of her assistance to him.
Throughout the periods that the plaintiff lived with the defendant there is no evidence that he paid room and board. In the meantime, the members of the defendant's family lived in the same house and paid rent. The rent, however, was always paid to the defendant with no claim made by the plaintiff to same. There is no credible evidence of any written or clearly enunciated agreement between the parties to share the property or any accumulation of assets. There is no credible evidence that the plaintiff and defendant ever held themselves forth as husband and wife. Members of her family lived with her and it was well known to them that they were not married. Neighbors may have looked upon them as husband and wife, but others, who testified, knew that they were boyfriend and girlfriend. There was no credible evidence that the plaintiff took care of the maintenance and repairs on the house. The plaintiff offered no credible evidence to show that the he and the defendant ever made any joint purchases of property; that he made any repairs or renovations that significantly improved the value of defendant's property; that they shared joint bank accounts, pooled their earnings or income, filed joint tax returns, or ever had signatory powers to each other's charge, bank or other accounts. During the time that he claimed mutuality as to the ownership of the defendant's property, no efforts was made and no evidence offered that at any time he shared the property which he owned and/or his business.
The Court, having heard the parties and having examined the briefs, finds all of the issues for the defendant. In the opinion of the Court there is insufficient credible evidence produced to substantiate any one of the three counts alleged by the plaintiff.
Judgement may enter for the defendant.
Hale, JTR