## MARGUERITA MARROCCO *v.* MICHAEL A. GIARDINO
### (SC 16427)

Borden, Norcott, Katz, Palmer and Sullivan, Js.*

Argued January 12—officially released April 3, 2001

*Martin D. Wheeler*, with whom were *Claudine Siegel* and, on the brief, *Joanne Lewis* and *Terrence R. Real*, for the appellant (defendant).

*Patricia Pac*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Donald M. Longley*, assistant attorney general, for the appellee (state).

---

\* The listing of justices reflects their seniority status on this court as of the date of oral argument.

*Lucy Potter* and *Shelley White* filed a brief for the Connecticut Legal Rights Project et al. as amici curiae.

*Opinion*

KATZ, J. The principal issue in this appeal is whether, in an action for child support, the use of the "best interests of the child" criterion may justify an order against the noncustodial parent to pay child support from his public assistance benefits, an obligation otherwise proscribed by the child support and arrearage guidelines (guidelines).[1] The trial court approved a ruling by a family support magistrate that deviation from the guidelines is allowable in ordering an award of child support, if it is in the best interests of the child, even when the parent's sole source of income is from public assistance. The defendant appealed from the judgment of the trial court to the Appellate Court, and pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c), we transferred the appeal to this court. We reverse the judgment of the trial court.

The record discloses the following facts and procedural history. The plaintiff, Marguerita Marrocco, and the defendant, Michael A. Giardino, are the parents of a child born on October 31, 1985. The plaintiff has primary physical custody of the child. In 1996, then family support magistrate Paul Matasavage entered a default order requiring the defendant to pay child support in the amount of $50 per week plus $5 per week toward an undisclosed arrearage. On January 5, 1999, the defendant filed a motion for modification of child

---

[1] See Regs., Conn. State Agencies § 46b-215a-1 et seq. "The guidelines are promulgated by the commission for child support guidelines (commission), which was established by the legislature pursuant to General Statutes § 46b-215a. General Statutes § 46b-215b (a) provides that the guidelines are to be considered in all determinations of child support in the state, and creates a rebuttable presumption that the amount of support calculated through application of the guidelines is the amount of support to be ordered." *Jenkins* v. *Jenkins*, 243 Conn. 584, 586 n.2, 704 A.2d 231 (1998).

support on the grounds that he was incapacitated as a result of a motor vehicle accident and derived his sole support from supplemental security income (SSI), pursuant to 42 U.S.C. § 1381 et seq., and from state supplementation pursuant to General Statutes § 17b-600.[2] Thereafter, the family support magistrate temporarily suspended his prior order of child support and continued the matter to September 14, 1999, for purposes of considering whether, under the updated child support guidelines, effective August 1, 1999, the defendant would be required to pay child support.

On September 14, 1999, another family support magistrate, Denise Chisholm Langley, heard arguments on the defendant's motion to modify and the plaintiff's motion for contempt.[3] At that time, the defendant submitted a financial affidavit indicating that he had been receiving federal and state public assistance benefits consisting of SSI benefits in the amount of $500 per month, a state supplementation of $247 per month, and food stamps in the amount of $81 per month. On the basis of that affidavit, the family support magistrate determined that the defendant had no income under the guidelines, and, therefore, pursuant to those guidelines, owed $0 in current support. She concluded, however, that the best interests of the child justified a deviation from the guidelines, and, accordingly, ordered the defendant to pay $12 per week in child support and $1 per week toward any arrearages.[4] Specifically, the family support magistrate determined that it would be

[2] Subsequently, the defendant submitted to the family support magistrate a letter from his doctor, indicating that he was completely disabled.

[3] The plaintiff had filed a motion for contempt against the defendant on August 28, 1998. The family support magistrate did not dispose of the contempt issue during the hearing.

[4] At the hearing, in response to the defendant's claim that his weekly expenses "considerably" exceeded his income, the family support magistrate inquired as to the defendant's discretionary expenses, namely, cable television, motor vehicle and telephone expenses. The defendant responded that he paid approximately $11.54 per week for cable television, but that he had neither a car nor a telephone.

"inappropriate" and "unfair" to follow the guidelines in this case, noting that if the plaintiff and the defendant had been living together, the defendant would have had to share his SSI benefits and food stamps with his family.[5] She further noted that "it was unreasonable and outrageous" for the defendant to have made "no offer [of child support] in the best interests of [his] minor child."

The defendant appealed from the family support magistrate's decision to the trial court. The trial court, *Dranginis, J.*, dismissed the appeal, concluding that the guidelines did not prohibit the family support magistrate from using the deviation criterion—the best interests of the child—in ordering an award of child support when the defendant's income consisted only of public assistance. This appeal followed.

The defendant claims that the trial court improperly upheld the family support magistrate's decision to deviate from the guidelines in concluding that the defendant must pay child support out of his SSI benefits and public assistance grants. Specifically, he maintains that the SSI and state supplementation are expressly excluded from gross income in determining child support pursuant to § 46b-215a-1 (11) (A) (ix) and (B) (ii)[6] of the

---

[5] This determination ignored two important points. First, as we discuss later in this opinion, SSI is based on the *individual* recipient's financial need and provides no additional benefit for dependents. See footnote 16 of this opinion. Second, if the plaintiff and the defendant had been living together, the plaintiff's income would have been considered available to the defendant, and thus, the defendant's SSI benefits would have been reduced. See 42 U.S.C. § 1382a (a) (2) (A).

[6] Section 46b-215a-1 of the Regulations of Connecticut State Agencies provides in relevant part: "Definitions

"As used in sections 46b-215a-1, 46b-215a-2a, 46b-215a-3, 46b-215a-4a and 46b-215a-5a . . .

"(11) 'Gross income' means the average weekly earned and unearned income from all sources before deductions, including but not limited to the items listed in subparagraph (a) of this subdivision, but excluding the items listed in subparagraph (b) of this subdivision.

"(A) Inclusions

"The gross income inclusions are:

Regulations of Connecticut State Agencies. The defendant further argues that the trial court improperly concluded that the family support magistrate had improperly used the best interests of the child criterion to justify her decision to deviate from the guidelines.[7]

"(i) salary;

"(ii) hourly wages for regular, overtime, and additional employment up to a maximum of 52 total paid hours per week;

"(iii) commissions, bonuses and tips;

"(iv) profit sharing, deferred compensation and severance pay;

"(v) employment perquisites and in-kind compensation (any basic maintenance or special need such as food, shelter, or transportation provided on a recurrent basis in lieu of or in addition to salary or wages);

"(vi) military personnel fringe benefit payments;

"(vii) benefits received in place of earned income including, but not limited to, workers' compensation benefits, unemployment insurance benefits, strike pay and disability insurance benefits;

"(viii) veterans' benefits;

"(ix) social security benefits (excluding Supplemental Security Income [SSI]), including dependency benefits on the earnings record of an insured parent that are paid on behalf of a child whose support is being determined;

"(x) net proceeds from contractual agreements;

"(xi) pension and retirement income;

"(xii) rental income after deduction of reasonable and necessary expenses;

"(xiii) estate or trust income;

"(xiv) royalties;

"(xv) interest, dividends and annuities;

"(xvi) self-employment earnings, after deduction of all reasonable and necessary business expenses;

"(xvii) alimony being paid by an individual who is not a party to the support determination;

"(xviii) regularly recurring gifts, prizes, and lottery and gambling winnings (except as provided in paragraph [B] [iv] of this subdivision); and

"(xix) education grants (including fellowships or subsidies that are available for personal living expenses).

"(B) Exclusions

"The gross income exclusions are:

"(i) support received on behalf of a child who is living in the home of the parent whose income is being determined;

"(ii) federal, state and local public assistance grants;

"(iii) earned income tax credit; and

"(iv) the income and regularly recurring contributions or gifts of a spouse or domestic partner. . . ."

[7] The defendant also maintains that the trial court improperly upheld the family support magistrate's decision to deviate from the guidelines because:

The plaintiff argues, conversely, that the trial court was correct because the family support magistrate had acted within her discretion in deviating from the guidelines pursuant to § 46b-215a-3[8] of the Regulations of Connect-

(1) the family support magistrate had failed to make specific findings of fact regarding the best interests of the child, as required under the guidelines, and (2) federal law precludes orders to pay child support out of SSI benefits. Because we conclude that the guidelines permit neither SSI benefits, nor state supplementation to be reached for purposes of paying child support, we need not address these issues.

[8] Section 46b-215a-3 of the Regulations of Connecticut State Agencies, which describes the circumstances that may justify a support order different from the presumptive support amounts calculated under the child support and arrearage guidelines, provides: "Child support guidelines deviation criteria

"(a) Introduction

"The current support, health care coverage contribution, and child care contribution amounts calculated under section 46b-215a-2a of the Regulations of Connecticut State Agencies, and the amount of the arrearage payment calculated under section 46b-215a-4a of the Regulations of Connecticut State Agencies, are presumed to be the correct amounts to be ordered. The presumption regarding each such amount may be rebutted by a specific finding on the record that such amount would be inequitable or inappropriate in a particular case. Any such finding shall state the amount that would have been required under such sections and include a justification for the variance. Only the deviation criteria described in this section establish sufficient bases for such findings.

"(b) Criteria for deviation from presumptive support amounts

"(1) Other financial resources available to a parent

"In some cases, a parent may have financial resources that are not included in the definition of net income, but could be used by such parent for the benefit of the child or for meeting the needs of the parent. The following resources may justify a deviation from presumptive support amounts:

"(A) substantial assets, including both income-producing and non-income-producing property;

"(B) the parent's earning capacity;

"(C) parental support being provided to a minor obligor; and

"(D) the regularly recurring contributions or gifts of a spouse or domestic partner, but only if it is found that the parent has reduced his or her income or has experienced an extraordinary reduction of his or her living expenses as a direct result of such contributions or gifts.

"(2) Extraordinary expenses for care and maintenance of the child

"In some cases, a parent may be incurring extraordinary expenses that are essential for the proper care and maintenance of the child whose support is being determined. The following expenses, when found to be extraordinary

icut State Agencies on the basis that, given the best

and to exist on a substantial and continuing basis, may justify a deviation from presumptive support amounts:

"(A) education expenses,

"(B) unreimbursable medical expenses, and

"(C) expenses for special needs.

"(3) Extraordinary parental expenses

"In some cases, a parent may incur extraordinary expenses which are not considered allowable deductions from gross income but which are necessary for the parent to maintain a satisfactory parental relationship with the child, continue employment, or provide for the parent's own medical needs. The following expenses, when found to be extraordinary and to exist on a substantial and continuing basis, may justify a deviation from presumptive support amounts:

"(A) significant visitation expenses,

"(B) job-related unreimbursable employment expenses of individuals who are not self-employed, and

"(C) unreimbursable medical and disability-related expenses.

"(4) Needs of a parent's other dependents

"In some cases, a parent may be legally responsible for the support of individuals other than the child whose support is being determined. In such cases, it may be appropriate to deviate from presumptive support amounts based on the following factors:

"(A) resources available to a qualified child for whom a deduction was taken under subsection (e) of section 46b-215a-2a of the Regulations of Connecticut State Agencies;

"(B) verified support payments made by a parent for his or her dependent child not residing with such parent; and

"(C) the significant and essential needs of a spouse, provided

"(i) such needs may be used as a possible defense against an increase in the support order, but not as a reason for decreasing such order, and

"(ii) the income, assets, and earning capacity of such spouse shall be considered in determining whether to deviate.

"(5) Coordination of total family support

"In some cases, child support is considered in conjunction with a determination of total family support, property settlement, and tax implications. When such considerations will not result in a lesser economic benefit to the child, it may be appropriate to deviate from presumptive support amounts for the following reasons:

"(A) division of assets and liabilities,

"(B) provision of alimony, and

"(C) tax planning considerations.

"(6) Special circumstances

"In some cases, there may be special circumstances not otherwise addressed in this section in which deviation from presumptive support amounts may be warranted for reasons of equity. Following are such circum-

interests of the child, application of the guidelines would have been inequitable and inappropriate in this case.

"Resolution of this issue requires us to interpret the statutory scheme that governs child support determinations in Connecticut, and, therefore, constitutes a question of law." *Unkelbach* v. *McNary*, 244 Conn. 350, 357, 710 A.2d 717 (1998); *Jenkins* v. *Jenkins*, 243 Conn. 584, 587–88, 704 A.2d 231 (1998); see also *Charles* v. *Charles*, 243 Conn. 255, 258, 701 A.2d 650 (1997), cert. denied, 523 U.S. 1136, 118 S. Ct. 1838, 140 L. Ed. 2d 1089 (1998). The standard of appellate review governing questions of law dictates that "[w]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *Unkelbach* v. *McNary*, supra, 357; *Jenkins* v. *Jenkins*, supra, 588. "When the question of law involves statutory interpretation, that determination is guided by well settled principles." *Unkelbach* v. *McNary*, supra, 357. In construing statutes, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and com-

stances:

"(A) Shared physical custody.

"When a shared physical custody arrangement exists, deviation is warranted only when:

"(i) Such arrangement substantially reduces the custodial parent's, or substantially increases the noncustodial parent's, expenses for the child; and

"(ii) Sufficient funds remain for the parent receiving support to meet the basic needs of the child after deviation.

"(B) Best interests of the child.

"(C) Other equitable factors."

mon law principles governing the same general subject matter." (Internal quotation marks omitted.) Id.; *Jenkins* v. *Jenkins*, supra, 588. Moreover, "[o]ur rules of statutory construction apply to administrative regulations. . . . *Diamond* v. *Marcinek*, [226 Conn. 737, 744 n.8, 629 A.2d 350 (1993)]; *Preston* v. *Dept. of Environmental Protection*, 218 Conn. 821, 829 n.9, 591 A.2d 421 (1991)." (Internal quotation marks omitted.) *Vitti* v. *Allstate Ins. Co.*, 245 Conn. 169, 178, 713 A.2d 1269 (1998). Our examination of the language, history and purpose of the guidelines leads us to conclude that the defendant offers the more sound interpretation of the guidelines. Accordingly, we reverse the judgment of the trial court.

We begin with a brief overview of the relevant statutory and regulatory framework. In 1989, the legislature enacted No. 89-203 of the 1989 Public Acts, first codified at General Statutes (Rev. to 1991) § 46b-215a,[9] establish-

---

[9] General Statutes (Rev. to 1991) § 46b-215a provides: "Commission for Child Support Guidelines. Duties. Members. The commission for child support guidelines is established to review the child support guidelines promulgated pursuant to section 8 of public act 85-548, to establish criteria for the establishment of guidelines to ensure the appropriateness of child support awards and to issue updated guidelines not later than January 1, 1991, and every four years thereafter. The commission shall consist of eleven members as follows: The chief court administrator or his designee, the commissioner of human resources or his designee, the attorney general or his designee, the chairpersons and ranking members of the joint standing committee on judiciary or their designees and a representative of the Connecticut Bar Association, a representative of legal services, a person who represents the financial concerns of child support obligors and a representative of the permanent commission on the status of women, all of whom shall be appointed by the governor. The chairperson of the commission shall be elected by the members of the commission."

Since its enactment, § 46b-215a has been amended several times, making the statute applicable to payments on arrearages and past due support; see Public Acts 1991, No. 91-391, § 7; and changing the deadlines for the issuance of updated guidelines. See Public Acts 1992, No. 92-253, § 1, and Public Acts 1993, No. 93-329, § 5. A minor technical change was also made in 1993. See Public Acts 1993, No. 93-262, § 1. Substantively, however, this section has remained otherwise unchanged.

ing the third commission for child support guidelines, charged with three specific statutory mandates: (1) to review previous child support guidelines; (2) to establish criteria and promulgate new guidelines to "ensure the appropriateness of child support awards"; and (3) "to issue updated guidelines not later than January 1, 1991 and every four years thereafter."[10]

In General Statutes (Rev. to 1991) § 46b-215b (a),[11] the legislature made four significant changes in the application of the guidelines to questions of child support. These changes, moreover, replaced the "flexible and nondirective approach" taken by previous sets of guidelines that, although made available to the court, were in no way binding on it. See *Favrow* v. *Vargas*,

---

[10] The first set of guidelines were promulgated in 1984 pursuant to No. 84-74, § 1, of the 1984 Special Acts. They "were specifically for the use of family relations counselors in mediating and conciliating disputes and were not aimed at the discretion of the court . . . ." *Favrow* v. *Vargas*, 222 Conn. 699, 708, 610 A.2d 1267 (1992). The commission responsible for establishing the guidelines purposely made them flexible and nondirective. Id. In 1985, the legislature enacted No. 85-548 of the 1985 Public Acts, entitled "An Act Implementing the Federal Child Support Enforcement Amendments of 1984," in response to federal legislation regarding support for children. Id., 710 and n.13. Section 8 of Public Act 85-548 established a commission to develop guidelines, and expanded their use from family relations counselors to the court. The guidelines, however, were not binding on the court. Id., 710–11.

[11] General Statutes (Rev. to 1991) § 46b-215b provides in relevant part: "Guidelines to be used in determination of amount of support. Presumption. (a) The child support guidelines promulgated pursuant to section 8 of public act 85-548 and any updated guidelines issued pursuant to section 46b-215a shall be considered in all determinations of child support amounts within the state. In all such determinations there shall be a rebuttable presumption that the amount of such awards which resulted from the application of such guidelines is the amount of support to be ordered. A specific finding on the record that the application of the guidelines would be inequitable or inappropriate in a particular case, as determined under criteria established by the commission under section 46b-215a, shall be sufficient to rebut the presumption in such case. . . ."

Since its enactment, § 46b-215b has been amended to apply to payments on arrearages and past due support. See Public Acts 1991, No. 91-391, § 8. Another minor technical change was made in 1997. See Public Acts 1997, No. 97-1. Substantively, the statute has remained otherwise unchanged.

222 Conn. 699, 707–15, 610 A.2d 1267 (1992) (discussing history of and changes to guidelines). The statute provides: (1) that the guidelines "shall be considered in all determinations of child support amounts within the state"; (2) that "there shall be a rebuttable presumption that the amount of such awards which resulted from the application of such guidelines is the amount of support to be ordered"; (3) that in order "to rebut the presumption in such case," a court or family support magistrate must make a "specific finding on the record that the application of the guidelines would be inequitable or inappropriate in a particular case"; and (4) that such a specific finding must be "determined under criteria established by the commission . . . ." General Statutes (Rev. to 1991) § 46b-215b (a).

In response to these statutory mandates, the commission promulgated new guidelines in 1991, which were later revised in 1994, and again in 1999. The primary purposes of the current guidelines are: "(1) To provide uniform procedures for establishing an adequate level of support for children, and for repayment of child support arrearages, subject to the ability of parents to pay . . . (2) [t]o make awards more equitable by ensuring the consistent treatment of persons in similar circumstances . . . (3) [t]o improve the efficiency of the court process by promoting settlements and by giving courts and the parties guidance in setting the levels of awards . . . [and] (4) [t]o conform to applicable federal and state statutory and regulatory mandates." Child Support and Arrearage Guidelines (1999) preamble, § (b), p. i.

The guidelines are based upon the concept that children "should receive the same proportion of parental income that [they] would have received had the parents lived together." Id., preamble, § (c), p. i. Thus, "[t]oward that end, the guidelines are income driven, rather than expense driven. At each income level, the guidelines

allocate a certain percentage of parental income to child support. The percentage allocations contained in the guidelines aim to reflect the average proportions of income spent on children in households of various income and family sizes, and contain a built-in self-support reserve for the obligor . . . .[12] The result is that the guidelines incorporate an allocation of resources between parents and children that the legislature has decided is the appropriate allocation. Consequently, our interpretation of the guidelines must seek to preserve this allocation." (Citation omitted.) *Unkelbach* v. *McNary*, supra, 244 Conn. 357–58.

Under § 46b-215a-2a of the guidelines, the child support obligation first is determined by calculating the parent's net income, defined as "gross income minus allowable deductions . . . ." Child Support and Arrearage Guidelines (1999) preamble, § (f), p. v. Deviation criteria such as "the best interests of the child," become relevant only if a deviation from the amount of support calculated under the guidelines is sought pursuant to § 46b-215a-3.[13] The amount of support determined *without reference to the deviation criteria*, however, is presumed to be the correct amount of support. This presumption may be rebutted only by a specific finding on the record that it would be inequitable or inappropri-

[12] In 1999, the commission increased the child support orders of low income obligors by reducing the amount of income which an obligor was permitted to retain after payment of support. Under the 1994 guidelines, a court had been required to leave the obligor with a "self-support reserve" of $145 per week. See Child Support and Arrearage Guidelines (1994) preamble, § (d) (2) (B). The 1999 revision replaced that flat amount with a percentage, allowing low income obligors earning a net of $10 to less than $150 per week to retain 81 to 90 percent of that income, depending upon the number of children that the obligor has. See Child Support and Arrearage Guidelines (1999) preamble, § (d) (6) (A).

[13] Under § 46b-215a-3, there are six criteria, including the best interests of the child, which permit deviation from presumptive support amounts. See footnote 8 of this opinion.

ate to apply the guidelines because of evidence satisfying one of the guideline's deviation criteria. Id.

In considering the applicability of deviation criteria to change the presumptive amount of child support, we have stated that "[j]ust as different statutes must be read so as to form a consistent whole . . . the deviation criteria must be read, insofar as possible, so as to form a consistent whole with the guidelines, both of which were issued by the same commission." (Citation omitted.) *Favrow* v. *Vargas*, supra, 222 Conn. 715. In addition, we have recognized that because "the guidelines evolved from an experimental, intentionally nondirective and flexible approach to the imposition of standards that are *presumptively binding* on the court or magistrate . . . in general . . . the ensuing work of the commission substantially circumscribes the traditionally broad judicial discretion of the court [to deviate from the guidelines] in matters of child support." (Emphasis added.) Id.

With these principles in mind, we now turn to the plaintiff's claims in this appeal. The plaintiff concedes that under the guidelines, the defendant's presumptive child support obligation is $0. Indeed, she acknowledges that SSI benefits and any state supplementation are excluded from the determination of gross income for purposes of ascertaining child support.[14] Relying

[14] In promulgating the 1994 revision of the guidelines, the commission expressly excluded SSI as well as federal, state and local public assistance grants from the definition of gross income. See Child Support and Arrearage Guidelines (1994) preamble, § (f) (1) (C), p. viii ("[SSI] has been eliminated as a gross income inclusion"). Under § 46b-215a-1 (11), gross income is now defined as "the average weekly earned and unearned income from all sources before deductions . . . ." That section further identifies nineteen specific elements of gross income and provides that gross income includes, but is not limited to, those items. See Regs., Conn. State Agencies § 46b-215a-1 (11) (A). The list of specifically enumerated *inclusions* recognizes social security benefits, including dependency benefits as items included in gross income, but identifies SSI as an item that is *expressly excluded*. See footnote 6 of this opinion. In addition, the definition of gross income specifically *excludes* the following four items: "(i) support received on behalf of a child

primarily upon the public policy embodied in the preamble to the guidelines, however, the plaintiff argues that the intent of the guidelines is to ensure that all parents are responsible for their children, noting additionally that, "nowhere [in the guidelines] is there even an indication" that the commission intended to exempt SSI recipients from having to support their children. On that basis, she contends that the family support magistrate properly questioned the defendant about his living expenses, determined that cable television was a "discretionary expense," and used that expense as the basis for deviating, in the best interests of the child, from the presumptive child support order of $0 to $12 per week. We disagree.

The policies underlying the commission's decision to exclude both SSI and public assistance grants from the guideline's presumptive calculation of child support compel a conclusion that deviation from the guidelines cannot be premised on the availability of income attributable to those sources. First, the commission's decision to exclude SSI from gross income in 1994 was based on the fact that SSI is a federal social welfare program designed to provide a guaranteed *minimum* income level necessary for the subsistence of individuals who cannot work because of age, blindness or disability. *Schweiker* v. *Wilson*, 450 U.S. 221, 223, 101 S. Ct. 1074, 67 L. Ed. 2d 186 (1981); Child Support and

who is living in the home of the parent whose income is being determined; (ii) *federal, state and local public assistance grants*; (iii) earned income tax credit; and (iv) the income and regularly recurring contributions or gifts of a spouse or domestic partner." (Emphasis added.) Regs., Conn. State Agencies § 46b-215a-1 (11) (B). SSI, state supplementation, and food stamps constitute forms of public assistance. Indeed, state supplementation is offered by the department of social services to disabled persons receiving SSI. See General Statutes §§ 17b-2 (10) and 17b-600. Food stamps are also provided by the department of social services to low income persons in order to purchase sufficient food. See General Statutes § 17b-2 (9); 7 U.S.C. § 2011 et seq.

Arrearage Guidelines (1994) preamble, § (f) (1) (c), p. viii ("[SSI] has been eliminated as a gross income inclusion because it is a means tested federal assistance grant"). "Because of the nature of the program's mission, SSI recipients have a very low income level and little, if any, opportunity to raise that level because of their age or disability." *Young* v. *Young*, 802 S.W.2d 594, 598 (Tenn. 1990). Similarly, state supplementation is designed to provide only a *minimum level* of support to those recipients of SSI whose expenses exceed their current benefits. General Statutes § 17b-600.[15]

---

[15] General Statutes § 17b-600 provides: "Optional state supplementation program. Eligibility. The Commissioner of Social Services shall administer a program of optional state supplementation as provided for by Title XVI of the Social Security Act, as amended, and shall administer the program in accordance with the requirements provided therein. In accordance with the requirements of Title XVI of said Social Security Act, optional state supplementation may be provided to aged, blind and disabled individuals who receive supplemental security income benefits or who would be eligible to receive such benefits except for income, provided that any applicant or recipient of optional state supplementation shall be ineligible for such supplementary assistance if such person has made, within twenty-four months prior to the date of application for such aid, an assignment or transfer or other disposition of property for less than fair market value, for the purpose of establishing eligibility for benefits or assistance under this section, provided ineligibility because of such disposition shall continue only for either (1) twenty-four months after the date of disposition or (2) that period of time from date of disposition over which the fair market value of such property, less any consideration received in exchange for its disposition, together with all other income and resources, would furnish support on a reasonable standard of health and decency, whichever period is shorter, except that in any case where the uncompensated value of disposed of resources exceeds twelve thousand dollars, the Commissioner of Social Services shall provide for a period of ineligibility based on the uncompensated value which exceeds twenty-four months. Any disposition shall be presumed to have been made for the purpose of establishing eligibility for benefits or assistance unless the individual furnishes convincing evidence to establish that the transaction was exclusively for some other purpose. Property which is exempted from consideration in determining the financial eligibility of an individual for benefits or assistance, such as a house in which the individual resides, shall not be subject to the provisions of this section regarding transfers of property if such property is disposed of while an individual is receiving benefits or assistance under this section. The program of optional state supplementation shall be administered in

Thus, both SSI and state supplementation are awarded on the basis of need and are designed to protect the individual recipients from poverty. It therefore follows that allowing child support payments to be deducted from this already small figure, would reduce the recipient's income below that necessary to protect him or her from poverty; *Becker County Human Services* v. *Peppel,* 493 N.W.2d 573, 575 (Minn. App. 1992); *Young* v. *Young,* supra, 802 S.W.2d 598; in contravention to the legislative intent that drives these programs. The fact that the commission *expressly excluded* both SSI and public assistance grants from the calculation of gross income indicates that the commission recognized the purpose underlying these programs and determined that parents should not be required to subsist on below poverty level incomes so that they may provide *something* in child support.[16] Therefore, although the plaintiff

accordance with regulations to be adopted by the Department of Social Services, which regulations shall be consistent with the requirements of Title XVI of the Social Security Act pertaining to programs of optional state supplementation. Until such time as regulations are adopted by the department governing the program of optional state supplementation, the department is authorized to administer said program in accordance with the regulations and departmental policy manual provisions applicable to the aid to the elderly, aid to the blind and aid to the disabled programs, which regulations and policy manual provisions shall be fully applicable to the program of optional state supplementation, except that in no event shall optional state supplementation be given to persons who either are not recipients of federal supplemental security income benefits or are not persons who, except for income, would be eligible for supplemental security income benefits."

[16] The exclusion of SSI from gross income reflects one of the stated purposes of the current guidelines: "To conform to applicable federal . . . statutory and regulatory mandates." Child Support and Arrearage Guidelines (1999) preamble, § (b) (4). In *Young* v. *Young,* supra, 802 S.W.2d 598, the court recognized that "[i]mplicit in the SSI program, and the broader scheme of which it is a part, is the intention that these payments are for the benefit of the recipient, rather than for the benefit of the recipient and the recipient's dependents." Specifically, the court stated: "The Senate Report on the Social Security Amendments of 1972 describes the SSI program as a plan 'designed to provide a positive assurance that the Nation's aged, blind, and disabled people would no longer have to subsist on below-poverty-level incomes.' S. Rep. No. 92-1230, p. 384. The 1972 amendments also provided for Aid to

is correct in her assertion that the intent of the guidelines is to ensure that parents support their children, that principle has no application to those parents whose sole source of income is SSI and state supplementation.

Second, the most recent revision of the guidelines confirms what has been noted previously, namely, that the commission did not intend to require parents to pay child support from SSI benefits and state supplementation. In 1999, in response to this court's decision in *Jenkins* v. *Jenkins*, supra, 243 Conn. 584,[17] the commission reconsidered the definition of gross income under the guidelines and interpreted it broadly to include items that, in effect, increase the amount of income that is available for child support purposes. Specifically, the commission expanded the definition to include social security benefits received directly by the children of a noncustodial parent, benefits not previously included in the determination of gross income. Id., 595. It nevertheless maintained, however, the exclusion of SSI and public assistance benefits from that calculation. Id., 590–91.

In 1999, the commission also vastly increased the child support orders of *low income* obligors, those indi-

Families with Dependent Children, a program which 'offers welfare payments to families in which the father is dead, absent, *disabled*, or, at the State's option, unemployed.' S. Rep. No. 92-1230, p. 505 . . . . Thus, although '[t]he Committee believe[d] that all children have the right to receive support from their fathers,' S. Rep. No. 92-1230, p. 505, the [Aid to Families With Dependent Children] program it established provides that payments to the children of disabled fathers are separate from payments to the disabled fathers themselves. Had it been the intent of Congress that SSI funds would also benefit the recipient's dependents, these payments obviously would not have been set up in this way." (Citation omitted; emphasis in original.) *Young* v. *Young*, supra, 598.

[17] In *Jenkins* v. *Jenkins*, supra, 243 Conn. 595, this court concluded that social security dependency benefits received by the children of a noncustodial parent on account of that parent's disability must be included in the noncustodial parent's income for purposes of determining the parent's child support obligation.

viduals who indeed had *some* income under the guidelines, by significantly reducing the amount of income that he or she was permitted to retain after payment of child support.[18] The commission considered, however, but did not adopt, a fixed minimum payment provision under which a person would have been required to pay a minimum amount of support, regardless of whether he or she had any income under the guidelines.[19] Thus, although the commission made significant changes in the direction of expanding the amount of income that is available for child support purposes, indeed providing less protection to individuals earning very little, it nevertheless recognized a distinction between those with *no* earning capacity and those with *some* earning capacity.

Third, we are not persuaded that public assistance grants, including SSI benefits and state supplementation, qualify under the deviation criterion, "best interests of the child." As noted previously herein, the deviation criteria must be read so as to be consistent with the guidelines. *Favrow* v. *Vargas*, supra, 222 Conn. 715. To allow a deviation from the guidelines in this case, premised on the availability of public assistance grants, would be inconsistent with the guidelines because "[t]he guidelines expressly provide that public assistance grants are not to be included in [the] determi-

[18] Under the 1994 guidelines, an obligor retained a self-support reserve of $145 per week. The 1999 revision replaced that flat amount with a variable self-support reserve equal to net income minus a minimal support order, that order being as low as $1 for parents earning only $10 per week. See footnote 12 of this opinion.

[19] The commission addressed the minimum payment provision in its written responses to comments raised at public hearings. The response stated that the commission instead had chosen the variable approach "because it is not an arbitrary fixed amount, but is dependent on the obligor's income, and *is consistent with the obligor's ability to pay.*" (Emphasis added.) Commission for Child Support Guidelines Regulations, Response to Public Comments, p. 11.

nation of gross income." *Feliciano* v. *Feliciano*, 37 Conn. App. 856, 859, 658 A.2d 146 (1995).

In *Feliciano*, the Appellate Court addressed a nearly identical issue to the one in the present case, namely, whether public assistance grants, although expressly excluded from the definition of gross income, qualified under the deviation criterion, "other equitable factors," and therefore could be considered in calculating child support. Id. The court concluded that allowing this deviation would create "a back door method to consider something the legislature believed should not be considered." (Internal quotation marks omitted.) Id. The Appellate Court reasoned that "[w]here one part of the guidelines provides that public assistance benefits are not to be considered in establishing gross income, it would be manifestly inconsistent to allow those same benefits to be used as a deviation criterion under the catchall exception of other equitable factors." Id. This court affirmed that determination. *Feliciano* v. *Feliciano*, 236 Conn. 719, 721, 674 A.2d 1311 (1996).

Similarly, in *Favrow* v. *Vargas*, supra, 222 Conn. 699, this court addressed whether the trial court properly determined that the living expenses of a noncustodial parent could be considered in awarding child support under the same deviation criterion, "other equitable factors." We concluded that "the trial court's order finding a deviation from the guidelines on the basis of the respondent's actual living expenses amounted to a disagreement with the guidelines themselves, rather than an application of the deviation criteria established by the commission." Id., 716.

Specifically, in *Favrow* we noted: "It is true that the language of [the 'other equitable factors'] criterion is very broad and would, at first glance, appear to give the trial court almost as much discretion as it had before the promulgation of the guidelines. To read this crite-

rion, however, so as to permit the court to deviate from the guidelines solely on the basis of the noncustodial parent's actual living expenses, even when they are relatively modest in amount, would in effect permit the exception to swallow the rule. . . . Furthermore, to give precedence to current living expenses would be to read the catch-all, ['other equitable factors'] deviation criterion so as to be inconsistent with and, in effect, to govern the application of the guidelines themselves. Finally, to do so would be inconsistent with the circumscribed discretion that the guidelines have imposed on the trial court by the 1989 legislation that replaced the broad discretion that the trial court had in such matters before the promulgation of the guidelines." Id., 715–16.

In the present case, the best interests of the child criterion is comparable to the catchall deviation criterion, other equitable factors, addressed in *Favrow* and *Feliciano*. Similarly, although the best interests of the child criterion appears to give the trial court unlimited discretion to deviate from the presumptive award of child support, to give consideration to SSI and state supplementation would be to read the best interests of the child deviation criterion "so as to be inconsistent with and, in effect, to govern the application of the guidelines themselves." Id., 716; see *Iovieno* v. *Commissioner of Correction*, 222 Conn. 254, 258, 608 A.2d 1174 (1992) ("[w]hen construing a statute, we do not interpret some clauses in a manner that nullifies others, but rather read the statute as a whole and so as to reconcile all parts as far as possible" [internal quotation marks omitted]), overruled on other grounds, 242 Conn. 689, 699 A.2d 1003 (1997). Indeed, as this court acknowledged in *Favrow* v. *Vargas*, supra, 222 Conn. 716, permitting public assistance grants to qualify as a deviation criterion would allow the "exception to swallow the rule." Moreover, it would create "a back door method to consider something the legislature believed should

not be considered." (Internal quotation marks omitted.) *Feliciano* v. *Feliciano*, supra, 37 Conn. App. 859.

Lastly, in further support of our conclusion that the legislature intended SSI and state supplementation to be excluded from the determination of child support, we consider the tenet of statutory construction known as expressio unius est exclusio alterius, translated as " 'the expression of one thing is the exclusion of another.' Black's Law Dictionary (6th Ed. 1990); 73 Am. Jur. 2d, Statutes § 211 (1974). '[W]here express exceptions are made, the legal presumption is that the legislature did not intend to save other cases from the operation of the statute.' 73 Am. Jur. 2d, supra, § 316; see *Iovieno* v. *Commissioner of Correction*, [supra, 222 Conn. 258]; *Chairman* v. *Freedom of Information Commission*, 217 Conn. 193, 200, 585 A.2d 96 (1991)." *Gay & Lesbian Law Students Assn.* v. *Board of Trustees*, 236 Conn. 453, 476, 673 A.2d 484 (1996).

In 1999, for the first time, the commission expressly excluded from gross income the "regularly recurring contributions or gifts of a spouse or domestic partner." Regs., Conn. State Agencies § 46b-215a-1 (11) (B) (iv). The commission, however, also determined that those contributions or gifts may, "in limited circumstances, constitute a financial resource *justifying deviation from presumptive support amounts.*" (Emphasis added.) Child Support and Arrearage Guidelines (1999) preamble, § (h) (2).[20] Thus, § 46b-215a-3 (b) (1) (D) explicitly delineates such resources as bases for deviating from the guidelines. See footnote 8 of this opinion.

[20] This determination was made in response to this court's decision in *Unkelbach* v. *McNary*, supra, 244 Conn. 350, in which we concluded that contributions made by a parent's domestic partner toward his living expenses were included in the parent's gross income. Child Support and Arrearage Guidelines (1999) preamble, § (f) (B) (ii) ("[t]he commission believes that the principles enunciated in [*Unkelbach*] are best embodied in the form of a deviation criterion").

Moreover, that section provides explicit guidance to trial courts as to the exact circumstances that may justify a support order different from the presumptive amount calculated under the guidelines. Specifically, under § 46b-215a-3 (b) (1) (D), such circumstances are limited to those in which a parent has either "reduced his or her income or has experienced an extraordinary reduction of his or her living expenses as a direct result of such contributions or gifts."

In contrast, public assistance benefits and SSI, like contributions and gifts, are expressly excluded from the definition of gross income. Regs., Conn. State Agencies § 46b-215a-1 (11) (b) (ii); see footnote 6 of this opinion. Neither SSI, nor public assistance benefits are, however, expressly *included* in the deviation criteria. The absence of deviation criteria relating specifically to SSI and public assistance grants reflects that they were not intended to qualify as bases upon which a trial court may justify a deviation from the guidelines. In reliance on the classic inclusio unius est exclusio alterius principle, we conclude that, had the commission wanted to allow SSI and public assistance grants to be considered in determinations of child support, it would have provided a separate deviation criterion specifically including them, similar to that afforded to contributions and gifts.

Of course, every parent has a moral obligation to support his children. See *Rose* v. *Rose*, 481 U.S. 619, 632, 107 S. Ct. 2029, 95 L. Ed. 2d 599 (1987) ("family support obligations are deeply rooted moral responsibilities"). The defendant here, however, a disabled, noncustodial and indisputably indigent parent, is living on public assistance benefits directed at providing him with the minimum support necessary to live. By requiring these benefits, specifically designed to guarantee a floor for the defendant, to be diverted for child support purposes would be tantamount to uprooting that floor,

indeed, undercutting the minimum support guarantee that these programs intended.

In promulgating the guidelines, the commission recognized the purpose underlying SSI and public assistance grants. Indeed, it *expressly excluded* both SSI and public assistance grants from the definition of gross income, and thereafter, made no mention of these benefits as deviation criteria. Moreover, although balancing the financial needs of children against the needs of disabled parents who survive solely on SSI and public assistance grants is a difficult policy choice to make, it is neither the family support magistrate's nor our function to override the commission's legislative determination that SSI and public assistance may not be considered in determining child support. To allow a deviation from the guidelines, premised on income attributable to SSI and state supplementation would be inconsistent with the guidelines as well as the purpose of these programs. We therefore conclude that deviation from the guidelines cannot be based on income attributable to SSI and state supplementation.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment sustaining the defendant's appeal and to award $0 in current child support.

In this opinion the other justices concurred.