[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The instant action commenced in October, 1996 when the plaintiff father, a resident of Florida, initiated an interstate petition for child support pursuant to the Uniform Reciprocal Enforcement of Support Act (URESA),[1] Florida Statutes §§ 88.011 through 88.311, General Statutes §§ 46b-180 through 46b-206. The petition and accompanying papers were served on the respondent mother in hand on April 8, 1997. On the hearing date, May 1, the petitioner was present but the respondent CT Page 1297-ab did not appear. The court, Reynolds, F.S.M. granted the petition, ordered child support in the amount of $141.00 per week plus $28.00 per week on an arrearage to the petitioner established as $23,680.00. The matter presently before the court is the respondent's motion to modify dated April 21, 2001 seeking a reduction in the support order. The respondent claims a substantial change of circumstances in that she alleges that she is disabled and that her only income is supplemental security income (SSI) pursuant to 42 U.S.C. § 1381 et seq.
Some history of the case is necessary as background. The petitioner and the respondent had a non-marital relationship resulting in the November 12, 1992 birth of the child Michael Richard Hornat. In March 1993 the Department of Human Resources commenced a paternity action against the present petitioner, Michael Hornat. The action was returned to the Hartford Superior Court, styled Mercure v. Hornat, docket number FA93 — 0614046. Mr. Hornat moved for a paternity test which motion was granted. This court takes judicial notice of that court file. The laboratory report, which is in evidence in that file, reveals that red cell antigen and human leukocyte antigen (HLA) tests were performed. The results yielded a combined paternity index of 23,872 to 1 or a probability of 99.99% that Hornat is the child's father. Accordingly, on December 7, 1993, the court, Steele, F.S.M., entered judgment that Hornat is Michael's father.[2]
Meanwhile, on or about October 18, 1993, Hornat commenced a separate action pursuant to General Statutes §§ 46b-56 and 46b-61 seeking custody of Michael. The child's maternal grandmother, Ellen Fitzpatrick was also a party to that action, which is filed in Hartford as Hornat v.Mercure, docket number FA93 — 0530847. Hornat filed a written acknowledgment of paternity in that file[3] on October 19, and the court, Santos, J., granted him an ex parte temporary custody order. Eventually, on June 20, 1995, an agreement was reached whereby Hornat was awarded full custody of his son.
Thus it may be readily observed that by late 1996 there were three pending court files regarding the one child: the paternity action, the custody action and the interstate support action. By mid-1997 each file contained a judgment. No motion was made to consolidate the files and despite suggestions to do so;[4] they remain separate to this day.
This has affected post-judgment proceedings. In 1998 support enforcement served a contempt citation upon Ms. Mercure under the docket number of the custody case. of course, the citation was invalid because that file did not contain a support order. In 1999 Ms. Mercure filed a motion to modify support m the same custody file which was invalid for the same reason. Ms. Mercure then attempted to file for a modification in CT Page 1297-ac the paternity file. Mr. Hornat filed a contempt citation in the same file. Once again the motions could not be addressed. While the paternity file does include a support arrearage and an arrearage payment order against Mr. Hornat, there is no order against Ms. Mercure to be found in that file either. The present active support order is found only in the URESA file.
Ms. Mercure was successful in getting a motion to modify in the correct file before the court in late 1998. After several hearings the motion was denied by the court, Sullivan, F.S.M., who found that there was deterioration in her medical condition, but that it was self-inflicted due to her substance abuse. Another round of motions in 2000 resulted in the motion to modify being dismissed as it was again filed in the wrong file. The contempt citation, which was correctly filed, was denied based on inability to pay.
Finally, in April 2001, the parties successfully served each other under the correct URESA docket number, placing both Mr. Hornat's pro se contempt motion and Ms. Mercure's motion to modify before the court. In his contempt motion the petitioner alleges that since the court hearing in August 2000 he had not received any support payments nor had he received any contribution toward dental or medical expenses for the child, all in violation of the court orders. The respondent claims a substantial change of circumstances in that she "has been found disabled by the Social Security Administration" and that her sole source of income is SSI. The court heard the parties on both motions concurrently as provided by General Statutes § 46b-8; Bryant v. Bryant, 228 Conn. 630,639, 637 A.2d 1111 (1994);[5] Avella v. Avella, 39 Conn. App. 669,666 A.2d 822 (1995).
It is up to this court, as the trier of fact, to determine the credibility of witnesses and the weigh their testimony and that of the documentary evidence. Powers v. Olson, 252 Conn. 989, 105, 742 A.2d 799
(2000); Leo v. Leo, 197 Conn. 1, 4, 495 A.2d 704 (1985); Griffin v.Nationwide Moving Storage Co., 187 Conn. 405, 422, 446 A.2d 799
(1982); Riccio v. Abate, 176 Conn. 415, 418, 407 A.2d 1005 (1979); Raiav. Topehius, 165 Conn. 231, 235, 332 A.2d 93 (1973); Shearn v. Shearn,50 Conn. App. 225, 231, 717 A.2d 793 (1998); Mansfield v. Haynes, 12 S.M.D. 51, 52 (1998); Danford v. Symonds, 12 S.M.D. 32, 33 (1998); Kimeryv. Kimery, 9 S.M.D. 54, 57 (1995); O'Dell v. O'Dell, 9 S.M.D. 7, 8 (1995); Hepburn v. Hepburn, 8 S.M.D. 126, 133 (1994); Fretina v.Fretina, 5 S.M.D. 139, 142 (1991).
The court has the right to accept part and disregard part of the testimony of any witness. Barrila v. Blake, 190 Conn. 631, 639,461 A.2d 1375 (1983); Rood v. Russo, 161 Conn. 1, 3, 283 A.2d 220
CT Page 1297-ad (1971); Berluti v. Berluti, 5 S.M.D. 377, 382 (1991). The trier is not bound to believe even uncontroverted evidence. Walshon v. Walshon,42 Conn. App. 651, 654, 681 A.2d 376 (1996); Baretta v. T TStructural, Inc., 42 Conn. App. 522, 527, 681 A.2d 359 (1996); Cook v.Bieluch, 32 Conn. App. 537, 549-50, 629 A.2d 1175, cert. denied228 Conn. 910, 635 A.2d 1229 (1993)
The respondent mother has established that on August 9, 1999 she was awarded supplemental security income (SSI) by the Social Security Administration. Respondent's Exhibit 4. She also produced medical reports documenting bipolar disorder, depression, anxiety and sleep disorder. Respondent's Exhibits 1, 2 and 3. At the hearing, Dr. Nicholas A. DeMartinis, a psychiatrist at the outpatient clinic at John Dempsey Hospital testified. He confirmed the diagnosis of bipolar disorder and explained the medications prescribed for Ms. Mercure. He further explained that the respondent has shown some resistance to conventional medications, making her treatment course more difficult. Significantly, Dr. DeMartinis stated that while substance abuse on a continuing basis can contribute to resistance to treatment, he found Ms. Mercure's substance abuse to be intermittent, and that the resistance to medications persisted even when she was "free of any active substance abuse and taking the medications on a regular basis[6]. . . ." Dr. DeMartinis opined that due to "rapid fluctuations of symptoms that occur in bipolar disorder" the respondent would be unable to fulfill work obligations on a consistent basis. Therefore, he concludes that she is unable to work, even on a part-time or home occupation basis. Transcript, 11/8/2001, pp. 8-20.
The court ruled on the contempt motion from the bench. Transcript, 11/8/2001, p. 40. Ms. Mercure proved that she has been awarded SSI. Support enforcement conceded that it had no evidence of additional income and that based on the present circumstances, the existing order is "probably exorbitant". Mr. Hornat claims that the respondent "has another source of income. . . . she's making more money than she's saying." Transcript, 11/8/2001, p. 39. But he concedes that his claim is "unproveable". "I can't prove the income that she's — coming in. . . . it's just hard to prove the money that she is making on the side. . . . I just have no facts to back my statement. . . ." Transcript, 11/8/2001, p. 39.
Our law requires that a child support order must be obeyed even if it is thereafter modified or even overturned on appeal. Mulholland v.Mulholland, 31 Conn. App. 214, 224, 624 A.2d 379 (1993), aff'd,229 Conn. 643, 643 A.2d 246 (1994). However, "inability of the defendant to obey an order of the court, without fault on [the obligor's] part, is a good defense to a charge of contempt." Bryant v. Bryant, 228 Conn. 630, CT Page 1297-ae 637, 637 A.2d 1111 (1994); Perry v. Perry, 222 Conn. 799, 805, 611 A.2d 400
(1992); Mallory v. Mallory, 207 Conn. 48, 57, 539 A.2d 995 (1988); Maysv. Mays, 193 Conn. 261, 264, 476 A.2d 562 (1984); Tobey v. Tobey,165 Conn. 742, 746, 345 A.2d 21 (1974). "To constitute contempt, a party's conduct must be wilful. Ford v. Ford, 52 Conn. App. 522, 529,727 A.2d 254 (1999). Noncompliance alone will not support a judgment of contempt. Issler v. Issler, 50 Conn. App. 58, 64, 716 A.2d 938 (1998), rev'd on other grounds, 250 Conn. 226, 737 A.2d 383 (1999)." Bowers v.Bowers, 61 Conn. App. 75, 81, 762 A.2d 515 (2000). See also Eldridge v.Eldridge, 244 Conn. 523, 529, 710 A.2d 757 (1998); Connolly v. Connolly,191 Conn. 468, 483, 464 A.2d 837 (1983). The court held that "t]he evidence does not support that there's an ability to pay at this time. The contempt is denied." Transcript, 11/8/2001, p. 40.
As to the motion to modify, the burden of proof is on the party seeking the modification. Connolly v. Connolly, supra, 191 Conn. 473;Kaplan v. Kaplan, 185 Conn. 42, 46, 440 A.2d 252 (1981); Hayward v.Hayward, 53 Conn. App. 1, 9, 752 A.2d 1087 (1999); Jaser v. Jaser,37 Conn. App. 194, 204, 655 A.2d 790 (1995); Richard v. Richard,23 Conn. App. 58, 63, 579 A.2d 110 (1990); Mansfield v. Haynes, 12 S.M.D. 51, 52 (1998); Moffit v. Moffit, 12 S.M.D. 41, 42 (1998); Danford v.Symonds, 12 S.M.D. 32, 33 (1998); Murray v. Stone, 11 S.M.D. 149, 150 (1997); O'Dell v. O'Dell, 9 S.M.D. 7 (1995); Meyer v. Meyer, 7 S.M.D. 49, 52 (1993); Taylor v. Taylor, 7 S.M.D. 43, 44 (1993); Yochum v. Yochum, 6 S.M.D. 75, 80 (1992); Noble v. Noble, 6 S.M.D. 31, 32 (1992); Berluti v.Berluti, 5 S.M.D. 377, 381 (1991); Dubitzky v. Dubitzky, 5 S.M.D. 261, 271 (1991); Monahan v. Monahan, 4 S.M.D. 223, 227 (1990).
The moving party must demonstrate "that continued operation of the original order would be unfair or improper." McGuinness v. McGuinness,185 Conn. 7, 10, 440 A.2d 804 (1981); Noce v. Noce, 181 Conn. 145, 149,434 A.2d 345 (1980); Harlan v. Harlan, 5 Conn. App. 355, 357, 496 A.2d 129
(1985); Mansfield v. Haynes, 12 S.M.D. 51, 52 (1998); Moffit v. Moffit,
12 S.M.D. 41, 42 (1998); Danford v. Symonds, 12 S.M.D. 32, 33 (1998);Murray v. Stone, 11 S.M.D. 149, 151 (1997); Kimery v. Kimery, 9 S.M.D. 54, 57 (1995); Taylor v. Taylor, 7 S.M.D. 43, 45 (1993); Yochum v.Yochum, 6 S.M.D. 75, 80 (1992); Noble v. Noble, 6 S.M.D. 31, 33 (1992);Kraynak v. Godfrey, 5 S.M.D. 250, 251 (1991); Romaniello v. Romaniello, 5 SM.D. 87, 91 (1991). "The party seeking modification must clearly and definitely show individual facts and circumstances which have substantially changed." McGuinness v. McGuinness, supra, 185 Conn. 10.
"In determining whether there is a substantial change in circumstances, the court considers all evidence back to the most recent court order." Borkowski v. Borkowski, 228 Conn. 729, 741, 638 A.2d 1060
(1994); Shearn v. Shearn, supra, 50 Conn. App. 229; Crowley v. Crowley,
CT Page 1297-af46 Conn. App. 87, 90-92, 699 A.2d 1029 (1997); Danford v. Symonds, 12 S.M.D. 32, 34 (1998); Swain v. Swain, 10 S.M.D. 140, 142 (1996); Thomasv. Thomas, 8 S.M.D. 196, 198 (1994).
The outcome of the motion to modify is dictated by two recent Connecticut decisions. In Tevolini v. Tevolini, 66 Conn. App. 16
___ A.2d ___ (2001) at trial the defendant's counsel stated that she had qualified for social security benefits as a totally disabled person. The plaintiff objected on grounds that there was no evidence of total disability and demanded a hearing on the issue of the defendant's medical condition. The trial court ruled that such a hearing was unnecessary because "[i]f you qualify for social security disability, you are not able to work, and that's my position . . ." Id., 25. The Appellate Court reversed, holding that the social security determination had not been proved by evidence. Statements and representations of counsel are not evidence. Id., 26;State v. Duntz, 223 Conn. 207, 236, 613 A.2d 224 (1994); Cologne v.Westfarms Associates, 197 Conn. 141, 154, 496 A.2d 476 (1985); Celentanov. Zoning Board of Appeals, 135 Conn. 16, 18, 60 A.2d 510 (1948);Constantine v. Schneider, 49 Conn. App. 378, 397, 715 A.2d 772 (1998);State v. Carsetti, 12 Conn. App. 375, 379, 530 A.2d 1095, cert. denied,205 Conn. 809, 532 A.2d 77 (1987); Curtis v. Rives, 123 F.2d 936, 941
(D.C. Cir. 1941); Dunn v. Stewart, 235 F. Sup. 955, 964 (S.D.Miss. 1964); American National Bank Trust Co. of Mobile v. Long, 281 Ala. 654,656, 207 So.2d 129 (1968); Sloan v. Sloan, 393 So.2d 642, 644 (Fla.App. 1981).
Moreover, the Tevolini court held that the plaintiff could not be denied an opportunity to explore the issue of the defendant's health at trial. "We conclude that the [trial] court could not properly infer that the defendant's qualification for and receipt of social security disability payments foreclosed discussion as to the issue of her health. . . ." Tevolini v. Tevolini, supra, 66 Conn. App. 30.
The Supreme Court reached a result that at least superficially seems exactly the opposite in a case originating in this division, Marrocco v.Giardino, 255 Conn. 617, 767 A.2d 720 (2001). In that case the defendant moved for a downward modification of his support order. His income consisted of SSI, State supplemental benefits and food stamps. The Family Support Magistrate determined that since all of the defendant's income sources were excluded under the guidelines, the presumptive support order was zero. However, the court granted an upward deviation based on the best interests of the minor child. Regs., Conn. State Agencies §46b-215a-3-(b)(6)(B). On appeal, this decision was affirmed the Superior Court.
However, the Supreme Court reversed. "The policies underlying the CT Page 1297-ag commission's decision to exclude both SSI and public assistance grants from the guideline's presumptive calculation of child support compel a conclusion that deviation from the guidelines cannot be premised on the availability of income attributable to those sources. First, the commission's decision to exclude SSI from gross income in 1994 was based on the fact that SSI is a federal social welfare program designed to provide a guaranteed minimum income level necessary for the subsistence of individuals who cannot work because of age, blindness or disability.Schweiker v. Wilson, 450 U.S. 221, 223, 101 S.Ct. 1074, 67 L.Ed.2d 186
(1981); Child Support and Arrearage Guidelines (1994) preamble, § (f)(1)(c), p. viii ("[SSI] has been eliminated as a gross income inclusion because it is a means tested federal assistance grant'). `Because of the nature of the program's mission, SSI recipients have a very low income level and little, if any, opportunity to raise that level because of their age or disability.' Young v. Young, 802 S.W.2d 594, 598
(Tenn. 1990). Similarly, state supplementation is designed to provide only a minimum level of support to those recipients of SSI whose expenses exceed their current benefits. General Statutes § 17b-600.
"Thus, both SSI and state supplementation are awarded on the basis of need and are designed to protect the individual recipients from poverty. It therefore follows that allowing child support payments to be deducted from this already small figure, would reduce the recipient's income below that necessary to protect him or her from poverty; Becker County HumanServices v. Peppel, 493 N.W.2d 573, 575 (Minn.App. 1992); Young v.Young, supra, 802 S.W.2d 598; in contravention to the legislative intent that drives these programs. The fact that the commission expressly excluded both SSI and public assistance grants from the calculation of gross income indicates that the commission recognized the purpose underlying these programs and determined that parents should not be required to subsist on below poverty level incomes so that they may provide something in child support. Therefore, although [it is correct] that the intent of the guidelines is to ensure that parents support their children, that principle has no application to those parents whose sole source of income is SSI and state supplementation." Marrocco v.Giardino, supra, 255 Conn. 630-633.
The granting of SSI benefits to Ms. Mercure constitutes a substantial change of circumstances which occurred since the most recent court order. Likewise, the establishment, through the testimony of her psychiatrist, that she not only has a diagnosed disorder but that the disorder is at least in part independent of her substance abuse, also constitutes a substantial change of circumstances. Accordingly, the motion to modify is granted.
"General Statutes § 46b-215b (a) provides that the guidelines are to CT Page 1297-ah be considered in all determinations of child support in the state, and creates a rebuttable presumption that the amount of support calculated through application of the guidelines is the amount of support to be ordered." Jenkins v. Jenkins, 243 Conn. 584, 586 n. 2, 704 A.2d 231
(1998).
"The child support guidelines require the court to first determine the presumptive support order prior to applying any deviation criteria. Regs., Conn. State Agencies § 46b-215a-3-(a); Arias v. Macedo, 14 S.M.D. 287, 6 Conn.Ops. 1335, 2000 Ct. Sup. 12916 (2000)." Dillon v.Dillon, 15 S.M.D. ___ (2001). Ms. Mercure's financial affidavit discloses her SSI benefits as her only source of income. This income is specifically excluded from gross income under the guidelines, Regs., Conn. State Agencies § 46b-215a-1 (11) (A) (ix). Accordingly, as required by the guidelines and the Supreme Court decision in Marrocco v.Giardino, the court finds that the presumptive support order is zero.
Marrocco v. Giardino appears to preclude an upward deviation for an obligor receiving SSI. Yet the Tevolini court virtually scolds the trial court for precluding the opposing party from exploring the Social Security determination. How then do we reconcile these cases? This court believes that the key is the source of the funds proposed to be utilized for support. The Supreme Court made this distinction in its conclusion inMarrocco v. Giardino: "To allow a deviation from the guidelines, premisedon income attributable to SSI and state supplementation would be inconsistent with the guidelines as well as the purpose of these programs. We therefore conclude that deviation from the guidelines cannot be based on income attributable to SSI and state supplementation."Marrocco v. Giardino, supra, 255 Conn. 639 (emphasis added). The SSI cannot be invaded for child support, nor can the court grant a deviation which would require utilization of the SSI in order to comply with the support order. However, Tevolini allows exploration of the health issue. It would follow, then, that any actual income outside of the SSI or other exempt income, or the capacity to earn such peripheral income, is fair game for inquiry.
It is apparent that the State and the petitioner father question the degree of disability of the respondent and whether she has actual undisclosed income or a capacity to earn income. It is therefore incumbent for this court to evaluate the evidence supporting these claims. The evidence relative to these issues is essentially the same analyzed earlier with reference to the contempt citation. In short, the court finds the in court testimony of Dr. DeMartinis persuasive in establishing that the respondent is unable to work either full time or part time. Furthermore, as stated earlier, although both the State and Mr. Hornat suspect that Ms. Mercure has an additional source of income, CT Page 1297-ai they are unable to produce any evidence of it.
The child support guidelines provide for deviation where the court finds "[o]ther financial resources available to a parent." A parent's earning capacity is specifically included in this subsection. Regs., Conn. State Agencies § 46b-215a-3-(b)(1)(B). However, in view of Dr. DeMartinis' testimony regarding the respondent's medical condition, the court is unable to find a sufficient earning capacity to support an upward deviation. There was some testimony that Ms. Mercure's mother intermittently gives her money. Transcript, 11/8/2000, pp. 31, 33-34. This evidence was not sufficient to justify a deviation under Regs., Conn. State Agencies § 46b-215a-3-(b)(1)(D).[7]
In view of the absence of sufficient evidence of peripheral income or to support a deviation this court must order the presumptive amount calculated under the guidelines. Accordingly, the child support order is modified to $0.00 current support plus $0.00 on the arrearage, effective January 20, 2002.[8]
There are three ancillary matters that must be addressed by the court. First, the respondent filed a motion to dismiss application for contempt. In view of the court's denial of the contempt citation on the merits, this motion is moot and is therefore denied.[9]
Next, the respondent's counsel filed a motion for order re: payment of attorney's fees. The motion generally complains that invoices regarding this case submitted by counsel have not been paid. Counsel apparently fears that he will not be properly compensated for his services.
There is an orderly process whereby bills of court-appointed counsel are reviewed and audited by the Judicial Branch. General Statutes §51-9. Any court-appointed counsel, as an officer of the court, is bound by the practice rules, and the fee schedule promulgated by the judges pursuant to their statutory rule-making authority provided in General Statutes § 51-14 (a) as to what he bills the State. Campbell v.Darling, 16 S.M.D. ___ (2002); Robinson v. Gwozdz, 15 S.M.D. ___ (2001);Carraway v. Freeman, 5 S.M.D. 340, 344-58 (1991); see also Morales v.Rios (II), 15 S.M.D. ___, 7 Conn.Ops. 943, 2001 Ct. Sup. 9762 (2001). It is not appropriate to circumvent the established process through a direct motion to the court. In any event the adjudication of the contempt citation had not been completed when the motion was filed. Now that the proceeding is concluded, counsel should submit his bill through normal channels.
As a matter of guidance to counsel in submitting his invoice, the court notes that it extensively discussed the parameters of court-appointed CT Page 1297-aj counsel in the recent case Robinson v. Gwozdz, 15 S.M.D. ___ (2001). "It is axiomatic that in a civil contempt hearing in which the possibility exists that an incarceration may result, the defendant's liberty interest is at stake and therefore he is constitutionally entitled to court-appointed counsel." Id. "The due process clause of thefourteenth
amendment to the United States constitution guarantees the right to appointed counsel to any indigent civil contemnor who might be incarcerated." Ridgway v. Baker, 720 F.2d 1409, 1413 (5th Cir. 1983);United States v. Bobart Travel Agency, Inc., 699 F.2d 618, 620 (2d Cir. 1983); Mastin v. Fellerhoff, 526 F. Sup. 969, 973 (S.D. Ohio 1981); see also Lake v. Speziale, 580 F. Sup. 1318, 1341-42 (D. Conn. 1984);Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530
(1972); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799
(1963); Lassiter v. Department of Social Services, 452 U.S. 18, 25,101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); In Re Gault, 387 U.S. 1, 34-42,87 S.Ct. 1428, 18 L.Ed.2d 527 (1966); Emerick v. Emerick, 28 Conn. App. 794,797-98, 613 A.2d 1351 (1992).
In family contempt matters in Connecticut, this right is codified in General Statutes § 46b-231 (m)(7) and in Practice Book § 25-63
(a), which provides:
"(a) A person who is before the court in a civil contempt proceeding involving the failure to comply with the order of a judicial authority in a family matter and who faces potential incarceration shall be advised of his or her right to be represented by counsel and his or her right to court appointed counsel if he or she is indigent. If the person is unable to obtain counsel by reason of his or her indigency he or she shall have counsel appointed to represent him or her unless:
"(1) He or she waives such appointment pursuant to Section 25-64; or (2) At the time of the application for the appointment of counsel, the judicial authority eliminates incarceration as a possible result of the proceeding and makes a statement to that effect on the record."
"[D]efendant's right to court-appointed counsel depends upon the defendant's indigency." DeMace v. Whittaker, 196 Conn. 413, 417,493 A.2d 219 (1985). Absent a waiver,[10] the defendant's indigency appears to be the only limiting factor. Even elimination of the threat of incarceration limits the defendant's ability to request court-appointed counsel only if it is removed at the time of the application for theappointment of counsel.
"It is clear, however, that indigency and a contempt citation do not entitle a person to indefinite and unlimited representation at taxpayers' expense. The constitutional right to court-appointed counsel lasts only CT Page 1297-ak as long as the defendant is indigent and a contempt citation is pending. This was recently codified in the rules as Practice Book § 25-63
(c), which states: `Any attorney appointed to represent the contemnor shall represent such contemnor only on the contempt, and shall not be appointed for any other purpose.'
"The rules committee promulgated this rule primarily in response to dilatory motions filed by some court-appointed attorneys at taxpayer expense. The rule does not and can not preclude an attorney from competently, diligently and zealously representing his client as he is ethically required to do. Rules of Professional Conduct 1.1, 1.3, 3.1 and 3.2. What the rule does do is limit the State's financial obligation to the contempt proceedings. This is clear from the commentary: `The Judicial Branch is only obligated to pay for services on a contempt, and counsel should be compensated for representation on the contempt.' W. Horton K. Knox, Practice Book Annotated, author's comment to § 25-64." Robinson v. Gwozdz, 15 S.M.D. ___ (2001).
"This court does not believe that the Superior Court judges in promulgating this rule, intended courts to devote significant time in picking apart the billings of court-appointed counsel. Furthermore, the judges were surely aware that issues often overlap in family cases. In fact, General Statutes § 46b-8 encourages simultaneous hearing of contempt motions with motions to modify. The issues are often interwoven and often based on the same evidence. See Carraway v. Freeman, 5 S.M.D. 340, 342 (1991). In some instances the precise defense to a contempt for failure to pay the support order may be an inability to pay the order because of a significant adverse change of circumstances. The court questions exactly how much of a tap dance is expected of court-appointed attorney in such a situation. Although the undersigned was not privy to the deliberations of the rules committee, its discussions with members of that committee suggest such a rigid. interpretation is not warranted."Robinson v. Gwozdz, 15 S.M.D ___ n. 3, (2001).
The present case involved an extended hearing of a contempt citation and a motion to modify heard simultaneously pursuant to General Statutes § 46b-8. It should be clear that counsel may not bill the State for work done purely on the motion to modify. For example, preparation of the motion itself could not be billed. However, a substantial portion of the evidentiary hearing (and presumably the preparation therefor) applied to defense of the contempt citation as well as for the motion to modify. An example of this would be the entire medical evidence. The foregoing should provide adequate guidance to counsel as to submitting a proper invoice.
Finally, the court finds itself drawn irresistibly to the continued CT Page 1297-al existence of three parallel files. None of the parties or counsel has heeded the court's suggestion to move to consolidate the files. The court is loath to act sua sponte m this regard. However, observation of the intermingled pleadings and papers that permeate all three files convinces the court that there is no chance that such confusion will continue unless the files are consolidated and merged. Accordingly the court on its own motion orders the files consolidated. The surviving file should be the action initiated in the Superior Court under docket number FA93 — 0530847.
BY THE COURT
Harris T. Lifshitz Family Support Magistrate